68 So.2d 886 (1953)
CONE
v.
CONE et al.
EVANS
v.
CONE.
Supreme Court of Florida. En Banc.
December 18, 1953.
Redfearn & Ferrell, Miami, for petitioner.
Milton R. Wasmas, Miami, for respondent.
PER CURIAM.
Alice Evans Cone and Allen Michael Cone were divorced in July 1950. The custody of their children, Michael Bryan Cone and Tonia Roberta Cone, ages 9 and 6 respectively, were awarded to the mother, the father being required to pay her $20 per week for their support. July 30, 1952, Alice Evans Cone was killed in an automobile accident on a trip to Alaska. Thereupon, Allen Michael Cone petitioned the Court to modify the divorce decree so as to give him custody of the children. He *887 alleged that they were in custody of Mrs. Lillian B. Evans, their grandmother, who was permitted to intervene.
On final hearing the chancellor modified the divorce decree and awarded custody of the children to petitioner. On appeal to this Court that order was quashed and custody was awarded to Mrs. Evans "with such provisions for visitation by the father and support money for the children as may to the Chancellor seem fitting and proper." 62 So.2d 907, 910. Thereafter, Mrs. Evans' petition for support of the children was first denied but on rehearing after taking testimony the following order was entered:
"* * * that Allen Michael Cone pay to Lillian B. Evans each week for the use of his children the sum of $5.00 for laundry and school lunches, and $4.00 per week for laundry and dry cleaning after the end of the school year, and that he furnish directly to the children their clothing and amusement and incidental allowance, and that he pay directly such medical and dental expense as he insure, or authorizes (except in the event of an emergency Mrs. Evans may commit Mr. Cone to this type of expense so long as it is reasonable.) Upon 24 hours notice Mr. Cone may visit the children on any weekend of Saturday and Sunday and take them away from home if he wishes. During the summer he may have the children with him for any 4 week period he designates 10 days in advance, paying their transportation from and to the home of Mrs. Evans. No attorney's fee or costs are awarded".
We are confronted with a petition for certiorari requesting that the quoted order be quashed and that a judgment for costs, attorneys fees and support of the minor children be entered in its place.
The order complained of hardly rises to a token attempt to comply with the order of this Court. A tacit evasion or subterfuge would be a better name for it. The Courts of this country are committed to the doctrine that a trial court is without authority to alter or evade the mandate of an appellate court absent permission to do so. Baskin v. Klemm, 118 Fla. 657, 160 So. 509.
The record discloses that when the petition for support and maintenance was presented to the chancellor he was much disturbed and announced that he would not allow a dime for the support of the children. From this he proceeded to a lip castigation of this Court for its order awarding custody of the children to Mrs. Evans. He pronounced the decision of this Court awarding custody of the children to Mrs. Evans as an outrage, said that it amounted to selling minor children to the highest bidder, taking from the poor and giving to the rich, that it deprived the father of the children and gave them to a stranger and that the justice who wrote the opinion had not even read the record in the cause. He concluded his exhibition by reproaching counsel for Mrs. Evans for suggesting the inappropriateness of his remarks.
The chancellor denies some of the chatter attributable to him, but accepting at face value that which he does not deny, it was a crude, vulgar and unbecoming display of a nasty temper, it was away beneath the dignity of a court of justice and descended to the very mudsills of indecorum. It is common knowledge that judges and their decisions are subject to honest, intelligent, or constructive criticism, even an allowable bit of destructive and uninformed criticism may at times be overlooked from one who will not take the pains to inform himself, but to distort and extract from a judgment the insinuations, the misrepresentations and the innuendoes that were practiced here and pan them off to the public and the press as intelligent or constructive criticism is inexcusable and does nothing but discredit the administration of justice. Calling one names and distorting evidence is not constructive criticism.
When a lawyer dons the ermine and mounts the woolsack he assumes a very serious obligation to the people he serves. Nothing more seriously affects their lives, their property and their safety than his decisions, *888 the weight of which is determined by his wisdom and integrity. The ermine is the symbol of purity, honor and wisdom, that brand of wisdom which is the flower of years and experience. From the time he is clothed with judicial authority he is a marked man. His words and his conduct should inspire confidence; he might well strive to honor the bench instead of having it honor him. The judiciary is the capstone of our democracy but it will be so no longer than its deportment warrants.
More than 300 years ago one of the great masters of our craft pointed out that a "much talking judge is no well tuned cymbal." The function of a judge is to listen, to inform himself, to balance the equities and to mete out justice. He is expected to act his best and inspire the best in others; he should strive eternally to push out and broaden his legal and intellectual horizon. His profession calls for knowledge on so many subjects. Above all he should go easy on vices and strong on virtues. A judge should be deeply sensitive to the dignity of the court room and equally respectful to the law and lawyers. Such a brand of conduct begets confidence in the bar and the public; it engenders in the public an exalted and merited admiration for the judiciary, which is not acquired by permitting oneself to boil inside, run over at the mouth, then castigate members of the bar or distort appellate decisions. Such conduct falls far short of constructive criticism.
The administration of justice is the most important business of the State. Said Emanual Comptee: "When justice is gone it is no longer important that men live on this earth." Our people imposed the duty of administering justice on the bench and bar. In this the lawyer is the right arm of the court, and while he may be disciplined for improper conduct it is highly improper for a judge to give way to a burst of passion and discredit a lawyer for nothing more than an attempt to conduct the litigation within proper bounds. The judiciary is in fact no place for the exhibitionist, one who has not matured emotionally or one who cannot restrain his passions. The judge's primary function is a search for truth. Reasonable men invariably agree when confronted with the true facts. Some sage pointed out that the degree of our emotions varies inversely with our knowledge of the facts; the less we know, the less light we throw on the controversy and the higher the heat rises. A judge increases his stature by exhibiting a sane sense of the important, by the wealth of his knowledge, the wisdom of his decisions, and the extent to which he squares his conduct with approved moral and professional standards. The public has a right to expect that of him and if he does not choose to impose such a standard on himself he should not accept judicial appointment. The legend on the seal of this Court, (Sat cito si recte  soon enough if correct or accurate) if pursued will add wisdom to his decisions.
So much for the lapses of the judges. Now let us consider the law of the case. From a study of the record we are impressed with the fact that the chancellor denied support for the children because Mrs. Evans was living in the home of an elder sister of some means (though there is no showing as to how much) who had been paying the grocery bills for both families. Even if this be true, the sister was a volunteer, she was under no legal obligation to pay the grocery bills and could refuse to do so at any time. There was no basis whatever for applying such a rule of law to the evidence. Aside from this, if the father will not do so voluntarily the law will require him to feed and clothe his children.
In the suit for divorce the chancellor required respondent to contribute $20 per week to the support of his children. It is alleged that he made these payments regularly up to January 1953, that he has paid nothing since that date despite the fact that his ability to do so has not materially changed. The petitioner, Mrs. Evans, is the maternal grandmother of the children, their custody was awarded the mother by the decree of divorce and when she embarked on her fatal journey, she left them in the custody of her mother, where they have since lived. Their custody was awarded *889 the grandmother in this litigation, they are now 12 and 9 years old and have expressed a preference to live with the grandmother. Their father was divorced from the mother for cruel and inhuman treatment and this court was convinced from the evidence that by American standards and traditions the mother's home environment is superior to that afforded by the father.
It is further shown that respondent made it necessary for Mrs. Evans to employ an attorney to represent her in this litigation and was put to the expense of a trip to Miami, 150 miles from her home to testify. In addition to this she was put to other expenses that were not necessary. She is accordingly entitled to be reimbursed for these expenses, including a reasonable attorney's fee.
It is accordingly ordered, adjudged and decreed that the judgment appealed from be and the same is hereby quashed and in lieu thereof, the chancellor be and he is hereby directed (as required by Section 59.34, Florida Statutes 1949, F.S.A.) to enter judgment in favor of petitioner requiring respondent to pay her $20 per week for the support of the minor children, Michael Bryan Cone and Tonia Roberta Cone, and that such payments commence from date the past payment was made.
The chancellor is further directed to include in said judgment against respondent, an attorney's fee of $200, including costs that she was legally required to pay in the defense of this litigation.
The chancellor is further ordered and directed to include in his judgment permission for respondent to visit the children any Saturday or Sunday or both at the home of petitioner in Leesburg, Florida, provided that on such visits he may on consent of petitioner take them out for meals or to ride under such reasonable restrictions as petitioner may impose. During July or August he may have them in his home for a period of five weeks, provided he arrange with petitioner the period he may have them and pay their transportation both ways from petitioner's home. He shall not remove them from the jurisdiction of this court without its consent.
ROBERTS, C.J., and TERRELL, SEBRING, MATHEWS and DREW, JJ., concur.
THOMAS, J., agrees to conclusion.
HOBSON, J., not participating.