122 So.2d 318 (1960)
Matter of the Petition for Adoption OF an Infant by Richard T. VERMEULEN and Lucille P. Vermeulen.
Anson A. CARRIER, Appellant,
v.
Richard T. VERMEULEN et al., Appellees.
No. C-148.
District Court of Appeal of Florida. First District.
July 19, 1960.
*319 Edward L. Bush, Palatka, for appellant.
Eugene L. Eastmoore, Palatka, for appellees.
WIGGINTON, Chief Judge.
On the appeal of this case we reviewed a final decree entered in a proceeding by which the Vermeulens sought the adoption of a minor child, Susan Ruth Helen Carrier. Attached to the petition filed in the trial court was a consent agreement for adoption signed by the child's natural mother, Ruby Carrier Townsend, by which the mother purported to grant, bargain and transfer the child in question to the Vermeulens for adoption. By this agreement the mother relinquished the permanent care, custody and control of the child and waived and surrendered all of her rights as natural mother of the child to the Vermeulens.
The child's father, Anson A. Carrier, appeared in the cause and filed an answer objecting to the adoption of his child by the petitioners and prayed that custody of the child be awarded to him. During the course of the trial the child's mother, Ruby Carrier Townsend, appeared as a witness on behalf of the petitioners. By her testimony she affirmed her consent to adoption by the petitioners and attested to their good character and ability to provide the child with a good home. The evidence taken during the trial, which was considered by the chancellor and upon which his final decree was based, is fully set forth in the opinion rendered by this court.[1] By such final decree the petitioners' prayer for adoption was denied, but they were awarded the permanent care and custody of the child with visitation rights granted the father.
By our opinion we found that the custody of the minor child involved in the proceeding had previously been fully adjudicated in an adversary proceeding between the child's natural father and mother by a court of competent jurisdiction in the State of Oregon. By the Oregon decree the custody of the child was awarded to the appellant father, Anson A. Carrier. We held that the record of this case was devoid of any evidence tending to show that since the entry of the Oregon decree appellant's circumstances have so changed as to render him incapable of caring for and rearing his child. We further held that there was no proof of such misconduct on the part of appellant as would justify a forfeiture of the custodial rights granted him by the court of original jurisdiction. We ultimately held that the trial court in this case erred in granting custody of the child to the appellees Vermeulen, and reversed that decree with directions that it be vacated and an appropriate decree be entered in accordance with the views expressed in our opinion. Implicit in our judgment is the holding that the appellant father is entitled to a decree awarding him custody of the child, and that a decree should be entered accordingly. Petition for writ of certiorari to review this court's decision was denied by the Supreme Court.[2]
Upon the going down of our mandate January 8, 1960, the appellant filed in the trial court a motion praying for the entry of a decree in accordance with the judgment and mandate of this court. This motion came on for hearing before the chancellor whose decree we had reversed. Instead of passing upon the motion the chancellor entered an order in which it is recited: "In the preparation and entry of *320 the final decree in this cause by the undersigned language was used as follows  `I am not hardhearted or cold-blooded enough to order, etc.,' and by reason of such language and the opinions otherwise expressed in the findings of the court in said decree it probably appears that the mind of the undersigned is so firmly fixed upon the correctness of said decree that it might influence his official action in any further consideration of this matter." By his order the chancellor then proceeded to disqualify himself from further participation in the cause and transferred the case to another circuit judge of that court to perform all further judicial functions incident to a final and complete determination thereof.
It becomes apparent by such order of disqualification that the chancellor misconceived his proper function as an administrator of the law. For personal rather than legal reasons he abdicated the responsibility which devolved upon him to comply with this court's mandate. The courts of this country are committed to the doctrine that a trial court is without authority to alter or evade the mandate of the appellate court absent permission to do so.[3] The judgment of an appellate court is a final judgment in the cause and compliance therewith by the lower court is a purely ministerial act.[4] The lower court's duty to perform such an act may not properly be avoided merely because of some preconceived notion as to the correctness of its judgment or the supposed incorrectness of the appellate court's opinion and judgment of reversal.
Appellate courts neither ask or expect a trial court to accept responsibility for the opinions and judgments rendered by them. Responsibility for the correctness of such opinions and judgments is exclusively theirs. Whether the court whose judgment or decree has been reversed continues to adhere to the conclusions originally reached by it, and assumes a position of disagreement with the wisdom or correctness of the appellate court's opinion, is wholly immaterial insofar as concerns the lower court's duty under the law to enter an appropriate decree in accordance with the appellate court's mandate.
Courts are the mere instruments of the law and can will nothing. In the over-all scheme for administering justice courts at the various levels of authority are required to discharge their lawful duties within the orbit of their respective jurisdictions. When one court has completed its judicial functions with respect to any matter brought before it, its responsibility as to such matter ends. If on appeal the result reached by the court of original jurisdiction is reversed or modified, that court is required to effectuate with fidelity and dispatch the mandate of the superior court. The reason for this rule is obvious. When a particular judgment is directed by the appellate court, the lower court is not acting on its own motion, but in obedience to the order of its superior. What that superior says it shall do, it must do, and that alone. Public interest require that an end shall be put to litigation, and, when a given cause has received consideration on appeal, its merits determined, and the cause remanded with specific directions, the court to which such mandate is directed has no power to do anything but obey the mandate. Under any other rule of procedure litigation would never be ended, the harmony of the whole judicial system would be inevitably marred, its integral parts brought into conflict, resulting in disorganization, disorder, incalculable mischief and confusion. The end product of any other rule would be a government of men instead of a government of law.
Judicial discretion is a legal discretion to be exercised in discerning the course prescribed by law. When, as here, that course has been discerned and a determination has been reached by this court *321 that appellant is entitled to custody of his minor child, it is the clear duty of the trial court to enforce the right. The power vested in the judiciary should be exercised for the sole purpose of giving effect to the will of the law, not for the purpose of giving effect to the will of the judge. Since this court's judgment reversed the decree and held that the child should be returned to appellant, the only remaining order for the trial court to make was to grant custody of the child and order its delivery to appellant.
Appellant's motion for the entry of an appropriate decree in accordance with this court's mandate was brought on for hearing before the second judge of the court to which the case had been assigned. At the conclusion of the hearing the chancellor took the motion under advisement instead of promptly entering the decree as directed by our mandate. The record shows that although more than sixty days have passed, the chancellor continues to advise with himself concerning the matter, and has failed as yet to enter any decree in the cause.
Appellant has now filed before this court a motion for the issuance of such writ as may be necessary and proper for carrying to completion the execution of this court's mandate, or in the alternative, for the entry of a decree in accordance therewith. It has now been made to appear that after the hearing on appellant's motion for the entry of a decree as directed by this court's mandate, the child's natural mother, Ruby Carrier Townsend, filed before the same chancellor who heard that motion a petition for a writ of habeas corpus in which the appellees Vermeulen were named as parties respondent. Appellant Carrier, the child's father, was not made a party to the proceeding. The record of that cause is not before this court, and we are therefore unable to determine on what possible theory of law the petitioner, Ruby Carrier Townsend, under the circumstances shown by this record, could properly contend that her child was being unlawfully detained by the respondents Vermeulen. By the motion now considered it has been made to appear that the chancellor, sitting as a judge on the law side of the court, proceeded to take testimony in the habeas corpus proceedings and rendered therein a final judgment in which he found that the mother was entitled to custody of the child, and ordered that its custody be awarded to her. It should be borne in mind that at the time this order was entered in the habeas corpus proceedings, the respondents Vermeulen had been awarded custody of the child by a final decree emanating out of the same court in which the judge was then purporting to act. The final decree was based in part upon a written waiver and consent signed by the mother, Ruby Carrier Townsend, in which she relinquished possession, care and custody of the child to the respondents Vermeulen, and upon the testimony of the mother that the Vermeulens should be permitted to adopt the child. By such action Ruby Carrier Townsend became a party to the proceeding and was bound by the decree entered therein.[5] Since the Vermeulens had been awarded custody of the child by a valid decree of the court which had not been set aside as directed by the judgment and mandate of this court, we are at a loss to understand how such custody could have been found by the trial judge to have been unlawful, requiring forfeiture of the Vermeulens' custody rights and a return of the child's custody to the mother. The action of the trial judge in awarding custody of the child to the mother on her petition for writ of habeas corpus was in direct conflict with the duty and responsibility which had previously devolved upon the same judge to enter a decree in the adoption proceedings granting custody of the child to its father under the judgment and mandate of this court. His action in entering the final judgment in habeas corpus was in utter disregard of this court's judgment and *322 mandate under the principles set forth above.
The procedure followed by the trial court in connection with the subject matter of this appeal has not only made a mockery of justice, but has posed a serious threat to the ability of our judicial system to settle with finality the rights of litigants in an orderly and efficient manner. "Although courts, as an indispensable arm of government, have existed, since the beginning of recorded history, for the administration of justice, through and by established rules of jurisprudence, in the administration of which was the outgrowth of the maxim, `Ubi jus ibi remedium' (there is no wrong without a remedy), the rule has long prevailed that there must be an end to the litigation of a particular cause, and that an alleged injured litigant, in order to establish what he may deem the justice of the cause, may not have de novo trial after trial, ad infinitum. The establishment of courts of justice was not, and is not now, for the purpose of promoting, but rather to end, litigation."[6]
In view of the evidence disagreement of the trial court both the correctness and wisdom of this court's opinion as indicated by its actual refusal to carry out the mandate issued by this court, we have concluded to exercise our power[7], and to enter that decree which the lower court should have entered. Accordingly it is
Adjudged and decreed that the final decree heretofore entered in this cause bearing date of October 2, 1958, be and the same is hereby set aside, vacated and held for naught.
It is further adjudged and decreed that the petition for adoption is denied and custody of the minor child, Susan Ruth Helen Carrier, daughter of respondent Anson A. Carrier, is hereby awarded to the said Anson A. Carrier; and the petitioners Richard T. Vermeulen and Lucille P. Vermeulen, the respondent Ruby Carrier Townsend, or any other person having the present custody of said child, are hereby commanded and directed, upon being served with a certified copy hereof, to forthwith deliver possession of said minor child to the respondent, Anson A. Carrier. Costs are hereby taxed against the petitioners Vermeulen in an amount to be fixed upon proper application to this court.
STURGIS and CARROLL, DONALD K., JJ., concur.
NOTES
[1] In re Petition of Vermeulen, Fla.App. 1959, 114 So.2d 192.
[2] Vermeulen v. Carrier, Fla. 1959, 116 So.2d 775.
[3] Cone v. Cone, Fla. 1953, 68 So.2d 886.
[4] Berger v. Leposky, Fla. 1958, 103 So.2d 628.
[5] F.S. §§ 72.13, 72.14, F.S.A.
[6] Partlow v. State, 194 Ind. 172, 141 N.E. 513, 30 A.L.R. 1414.
[7] Florida Constitution, Art. V, Sec. 5(3), F.S.A.; F.S. Sec. 35.08, F.S.A.