328 So.2d 825 (1975)
BLACKHAWK HEATING & PLUMBING CO., INC., an Illinois Corporation and Andrew Machatta, Petitioners,
v.
DATA LEASE FINANCIAL CORP., a Florida Corporation, Respondents.
No. 45003.
Supreme Court of Florida.
July 17, 1975.
Rehearing Denied December 8, 1975.
*826 Jos. D. Farish, Jr. and F. Kendall Slinkman of Farish & Farish, and Moyle, Gentry, Jones & Flanigan, West Palm Beach, for petitioners.
Leigh E. Dunston, Robert T. Scott and Marshall M. Criser of Gunster, Yoakley, Criser, Stewart & Hersey, Palm Beach, for respondents.
ADKINS, Chief Justice.
Petitioners Blackhawk and Machatta request that this Court enter an order requiring the trial court to comply with our opinion and mandate rendered in Blackhawk Heating & Plumbing Co., Inc. et al. v. Data Lease Financial Corp., Fla. 1974, and reported in 302 So.2d 404.
This case involved an agreement relating to the purchase of 870,000 shares of the common stock of Miami National Bank for a purchase price of $10,440,000. Upon rendition of our decision we remanded same to the District Court of Appeal with instructions to further remand same to the trial court for the purpose of determining the rights of the parties under the contract. We also reinstated the temporary injunction which had been entered by the trial court. The temporary injunction contained the following:
"At this stage of the case it is not certain that plaintiff had a valid option contract, or that it properly exercised it. On the other hand, plaintiff may well have a valid option, and its contentions as to the optionee's performance upon exercise of the option may be valid. The purpose of a temporary injunction being to maintain the status quo, North Dade Water Co. v. Adken Land Co., [Fla.App.] 114 So.2d 347, it would seem appropriate here because there is a myriad of beneficial aspects to the ownership of this stock which could be lost to plaintiff or compromised should the stock be disposed of or otherwise affected during the pendency of this litigation."
Even at that stage of the proceeding the Court recognized the advantages flowing from ownership of the stock, as outweighing the advantages of a cash payment.
The agreement of the parties provides:
"6. (a) In the event that either party shall at any time be in danger of defaulting in any payments due in connection with the purchase of MNB Stock, such party shall immediately give the other party timely notice of such fact and shall afford the other party an opportunity to remedy such default. Should the other party remedy such default then the party taking such remedial action shall be entitled to an increase in its equity in MNB Stock equivalent to the new proportion that payments made by it for such stock bear to all payments properly made hereunder.

"(b) Any cash flow benefit, including any tax benefits, derived by Data as a consequence of its holding, hypothecation, assignment, pledge, etc. of MNB Stock shall inure proportionately to Blackhawk in the calculation of any payments due between the parties." (Emphasis supplied.)
*827 When the mandate was received by the trial court, such court should have carried out and placed into effect the order and judgment of this Court. Rinker Materials Corporation v. Holloway Materials Corporation, 175 So.2d 564 (Fla.App.2d, 1965).
A trial court is without authority to alter or evade the mandate of an appellate court absent permission to do so. Cone v. Cone, 68 So.2d 886 (Fla. 1953). If the trial court fails or refuses to comply with the appellate court's mandate, the latter may, generally speaking, take any steps or issue any appropriate writ necessary to give effect to its judgment. State ex rel. Dowling Co. v. Parks, 99 Fla. 1264, 128 So. 837 (1930).
It now appears that more than six months have elapsed and the trial court has not yet determined the rights of the parties under the contract to purchase the bank stock. Instead, on May 20, 1975, the trial court entertained a motion for authorization to execute and perform an agreement by Data Lease to sell the stock and to modify the temporary injunction reinstated by this Court.
On June 5, 1975, the trial court dissolved the temporary injunction which order, says petitioner, was in violation of our mandate. We agree.
The trial court should have related the findings of the special master to the established Florida law in the construction of contracts and determined the amount, if any, required for the exercise of the option agreement. The order of the trial court dissolving the temporary injunction and authorizing the sale of the stock violated the mandate of this Court and is quashed.
Data Lease has also filed a motion seeking authorization to execute and perform the agreement to sell the stock and to modify the temporary injunction, or, in the alternative, to obtain the leave or consent of this Court to such modification and authorization. The record before this Court fails to show that mere substitution of cash would truly maintain the petitioners in the status quo posture mandated by this court pending outcome of the litigation, or that status quo should be altered.
In order to modify the mandate (which, in effect, would modify the prior decision), the party seeking permission must show some new relevant matter that would probably produce a different result had it been considered by the court. Upon such showing, this court may then amend its mandate or direct the lower court to make a factual determination on the question of whether such an amendment should be made. After permission from this Court, the trial court could modify or amend any judgment mandated by this Court. For a general discussion of these questions, see 5B C.J.S. Appeal and Error §§ 1994, 2002, 2003.
It has not been shown that Blackhawk caused any delay in the enforcement of the option agreement during the proceedings subsequent to our mandate, so it cannot be held responsible for the interest obligations accumulated by Data Lease. It has not been shown that the Bank has been jeopardized in any way.
This entire litigation involves the right of Blackhawk to purchase bank stock and the purchase price to be paid for the stock. It should not be deprived of this contractual right simply because a sale of the stock would be to the advantage of Data Lease.
The motion of Data Lease for authorization to execute and perform the stock sale agreement and modify the temporary injunction or, in the alternative, to obtain leave or consent of this Court to such modification or authorization is denied.
The trial court shall apply the established Florida law in the construction of contracts and determine the amount, if any, required for the exercise of the option *828 and to preserve the assets in question, i.e., the shares of the common stock of Miami National Bank. This was the mandate of our decision in this case.
It is so ordered.
ROBERTS, BOYD and SUNDBERG, JJ., concur.
ENGLAND, J., dissents with opinion.
ENGLAND, Justice (dissenting).
I respectfully dissent. I find nothing in the record on review to justify our acting to prevent a stock sale by Data Lease.
I have no quarrel with that portion of the majority's decision which directs the appointment of a master for a determination of the rights of the parties under the option contract. Our first opinion in this case[1] directed that result, and the record before us indicates that Blackhawk attempted to obtain that determination by appropriate request to the trial court, without tangible results. Blackhawk has every right to complain of the delay that has occurred since the entry of our clear mandate on that point. I cannot agree, however, with the majority's determination that the trial court erred in lifting the temporary injunction to allow a sale of the stock of Miami National Bank.
The threshold question before us, in my view, is whether the trial court or this Court has jurisdiction to modify or lift the temporary injunction. The majority holds that we do, but I hold the opposite view. A review of the chronology of the injunction explains why.
The trial court originally entered a temporary injunction on December 28, 1971, which it dissolved on February 18, 1973. At Blackhawk's request, that injunction was reinstated by an order of this Court, without hearing, on September 20, 1974. On October 24, 1974, we filed an opinion and entered our mandate disposing of the case presented to this Court on the merits.[2] The injunction was dissolved by the trial court, after hearing, on June 5, 1975, in the order which Blackhawk now brings to us for review.
The crux of this case relates to our action reinstating the injunction, based on Blackhawk's request that we "enter a writ reinstating the temporary injunction previously entered in this cause on December 28, 1971."[3] It is significant, indeed controlling, that we were not asked to enter an injunction from this Court, but rather to revitalize the trial court's temporary injunction. The legal effect of that action, coupled with our subsequent remand of the case for further fact-finding and action by the trial court, both divested this Court of jurisdiction and revested the trial court with jurisdiction. Following those acts here, the continuation, modification or termination of the status quo, through the injunctive process or otherwise, was a matter exclusively within the province of the trial court.[4]
I perceive a significant legal distinction between the original issuance of an injunction by an appellate court, as in Rinker Materials Corp. v. Holloway Materials Corp.,[5] and appellate approval of a lower court's original injunction, as in Mayo v. Florida Grapefruit Growers' Prot. Ass'n.[6] *829 In the former situation, the lower court is without power to modify the appellate court's injunction.[7] In this case, however, the mandate merely directs the trial court to determine the rights of the parties under the contract. This directive was the result of the Court's determinations (1) that there was conflict jurisdiction sufficient to warrant our review, (2) that the option contract was not fatally vague, and (3) that the exercise of that contract was valid notwithstanding the absence of dollar consideration. These conclusions fall short of a determination, even implicit, that Blackhawk would be irreparably harmed by any sale of the stock under any set of circumstances. That matter simply was not before the Court.[8] This case, then, parallels Mayo, where the trial court's temporary injunction was held subject to future modification or dissolution should equitable principles so require, notwithstanding its approval by the appellate court.
It follows that the trial court acted within the scope of its authority in finding, on the basis of a hearing and briefs, that the injunction could be dissolved to accommodate a sale of Data Lease's stock. We lack a factual, legal or jurisdictional basis to substitute our judgment for that of the trial judge on that subject.[9]
Beyond the threshold jurisdictional question, there is another reason that the injunction should not now be issued by this Court. If, in contravention of my view, we do have the power to entertain Blackhawk's request, we should deny the request in any event. The most that would be appropriate in the exercise of our power to supervise our mandate would be a determination that petitioner had made a prima facie showing of changed circumstance or need, sufficient to warrant a factual review of the status quo. Since we inherently lack any fact-gathering mechanism to determine whether the status quo should be preserved, we would after that showing ask the trial court to decide whether the injunction should be modified.
I am satisfied that Data Lease made such a prima facie showing in this case, having requested approval of either a new financing arrangement with First National City Bank or a sale of the stock. That showing entitled Data Lease to an evidentiary hearing on the continuation of the injunction, which is precisely what occurred before the present petition was filed here. Thus, the trial court has done already that which we would have directed it to do if in fact we had retained full and exclusive jurisdiction to affect the outstanding injunction. *830 Blackhawk has had its day in the proper court as to "irreparable harm", the basis for preserving the status quo, and it has lost.
I would dismiss the Petition to Require Compliance with Mandate and allow the trial court's directive to stand.

ON REHEARING
On consideration of the Petition for Rehearing filed by Respondent, Data Lease Financial Corp., and Response thereto,
IT IS ORDERED that said petition is denied.
ADKINS, C.J., and ROBERTS, BOYD and HATCHETT, JJ., concur.
SUNDBERG, J., dissents with opinion.
OVERTON and ENGLAND, JJ., dissent and concur with SUNDBERG, J.
SUNDBERG, Judge (on rehearing).
I have voted to grant rehearing in this cause. Since I was among the majority in the opinion filed July 17, 1975, I feel compelled to state the reason for my change in view upon the petition for rehearing.
I was persuaded at the time of the original opinion that the trial court was without power, due to our mandate, to change the status quo dictated by the temporary injunction reinstated by this Court on September 20, 1974. However, careful review of the record of the proceedings held herein has convinced me that (i) our previous mandate would not inhibit the trial court in entering its order complained of and (ii) the temporary injunction of the trial court reinstated by this Court was pendente lite.
The latter proposition appears clear from the posture of the case at the time and the manner in which this Court reinstated the trial court's injunction, without hearing. Mr. Justice England's dissent on this point is persuasive.
The matter of the true import of the Court's original mandate was made clear by paragraph 2. of respondent's petition for rehearing, wherein it was pointed out that by paragraph 7. of the Option Agreement, "subsequent to the exercise of Blackhawk's option", Data was free to dispose of the shares provided the interests of Blackhawk were protected in any such transaction. This Court mandated a remand to the trial court "for the purpose of determining the rights of the parties under the contract". (Emphasis supplied.) After a full adversary hearing the trial court determined a right of Data under the contract, i.e., the right to dispose of the shares. It is apparent that the trial court  the forum best able to make such determinations  after full consideration of the issues framed an order which permitted the exercise by Data of its rights under paragraph 7. of the Agreement and at the same time devised a method for protection of Blackhawk's minority stockholder rights. The action of the trial court does not interfere with determination of the ultimate issue in the case  the purchase price to be paid by Blackhawk for the shares as to which it has exercised its option to purchase.
OVERTON and ENGLAND, JJ., concur.
NOTES
[1] 302 So.2d 404, entered on October 24, 1974.
[2] Rehearing was denied on November 22, 1974.
[3] Prayer for relief in Petition For Writ Reinstating Temporary Injunction, filed on June 29, 1974.
[4] What constitutes the "status quo", and who may be prejudiced by its continuance, are questions which have never properly been before this Court. There has been no evidentiary hearing before us to show that Blackhawk would be irreparably harmed by the sale of stock, or to disprove an irreparable consequence to Data Lease if the injunction is preserved.
[5] 175 So.2d 564 (2d DCA Fla.), cert. denied, 180 So.2d 657 (Fla. 1965).
[6] 112 Fla. 117, 175, 151 So. 25, 44 (1933) (on rehearing).
[7] In Rinker, moreover, the appellate injunction expressly stated in its mandate that the particular activity should be enjoined. Rinker Materials Corp. v. Holloway Materials Corp., 167 So.2d 875, 882 (2d DCA Fla. 1964), cert. quashed, 173 So.2d 145 (Fla. 1965).
[8] To read our mandate as directing a continuance of the injunction or a maintenance of the status quo requires an inference from its directive to determine the rights of the parties, even if read in conjunction with the separate order reinstating the injunction. I would anticipate significant appellate mischief from a precedent to the effect that mandates from this Court carry "implied" directives which are only amendable by subsequent direct action of this Court.
[9] While this Court undoubtedly has initial injunctive powers, they exist in the limited context of an aid to our constitutional jurisdiction under Article V, § 3(b) (4) of the Florida Constitution (1973). These powers typically arise where the lower court refuses to act in the first instance, as in Anderson v. Tower Amusement Co., 118 Fla. 437, 159 So. 782 (1935), or where we attempt to preserve the status quo until the end of our appellate review. See State ex rel. Deeb v. Fabisinski, 111 Fla. 454, 152 So. 207, 156 So. 261 (1933). The former clearly was not the basis of our order reinstating the trial court's injunction. The latter may arguably be the basis for our reinstatement order of September 20, but if so the order would have abated automatically when the Court later established the law of the case and remanded for further action below.