DELL, Judge.
Blackhawk Heating and Plumbing Co., Inc. (Blackhawk) and Andrew Machata (Machata) appeal from an order finding Blackhawk liable to Data Lease Financial Corporation (Data Lease) for $2,757,267.78 and finding Blackhawk and Machata jointly and severally liable to Data Lease for $545,439.69. The trial court found these sums due pursuant to a stock option agreement and subsequent specific performance order.
Since 1973 this case has appeared in either this Court or the Supreme Court of Florida more than ten times.[1] It has also involved various actions in the Federal Courts which have affected the proceedings of the State courts.[2] Although the Southern and Federal Reporter contain numerous chronicles of the facts of this ease, we find ourselves compelled to again review the history of this case.
In 1969, Data Lease purchased 870,000 shares of Miami National Bank (MNB) stock at $12 per share. The purchase price included the assumption of certain loans and the execution of a $1,500,000 promissory note by Data Lease due on July 1, 1970. On May 18, 1970, Data Lease and Black-hawk entered into an option agreement whereby Blackhawk received an option to purchase 25 percent (217,500 shares) of Data Lease’s 870,000 MNB shares at $12 per share. In return, Blackhawk permitted Data Lease to use its credit, thereby enabling Data Lease to obtain a $2,000,000 loan to pay off the $1,500,000 promissory note. On January 25, 1971, Blackhawk notified Data Lease that it was exercising its option to purchase the shares of MNB stock but Data Lease refused to perform.
*129 Blackhawk filed a complaint for specific performance, injunctive relief, accounting and damages based upon the option agreement. The trial court granted a temporary injunction to prevent Data Lease from “selling, assigning, hypothecating, transferring or otherwise disposing of or encumbering” any of the 870,000 MNB shares. After trial on the merits, the trial court found that the option agreement contained vague, indefinite and uncertain terms and that Blackhawk failed to properly exercise its option, and entered a final judgment dismissing Blackhawk’s action for specific performance. The final judgment also dissolved the temporary injunction. Black-hawk appealed and this Court affirmed. Blackhawk Heating & Plumbing Co. v. Data Lease Financial Corp., 287 So.2d 118 (Fla. 4th DCA 1973).
In April of 1973, during the pendency of Blackhawk’s appeal to this Court, Data Lease refinanced the 1969 MNB stock purchase obligation by pledging all 870,000 MNB shares and other stocks with Citibank [3] in return for a loan of $6,217,630.13. Before the Florida Supreme Court reinstated the temporary injunction which the trial court had initially granted against Data Lease, Data Lease also borrowed additional sums totaling $347,000 under the Citibank pledge agreement. In 1974, the Supreme Court reversed this Court and held that the 1970 option agreement contained sufficiently certain terms to sustain a cause of action for specific performance and that Black-hawk had properly exercised the option. The Supreme Court remanded with directions for the trial court to determine the parties’ rights under the option agreement. Blackhawk Heating & Plumbing Co. v. Data Lease Financial Corp., 302 So.2d 404 (Fla.1974).
At this time, Citibank, pursuant to Data Lease’s pledge, held the stock certificate representing the 870,000 shares of MNB stock. The pledge permitted Citibank to register the certificate in its name or in the name of its nominee. On July 12, 1974, Data Lease defaulted on its loan from Citibank. On April 22, 1975, Citibank and Data Lease entered into another agreement which among other things required Data Lease at Citibank’s request to register the shares in the name of Citibank’s nominee and to exercise its best efforts to have certain persons elected to the board of MNB. Data Lease and Citibank obviously made this agreement without regard for Blackhawk’s rights to 217,500 shares of stock pursuant to the then recent decision of the Supreme Court and this Court’s mandate on remand.
In 1977, this Court, in an unreported order, granted Blackhawk’s motion to compel compliance with the mandate and instructed the trial court to
proceed to determine upon the presently entered findings of the Special Master the purchase price of the 25% stock of the Miami National Bank, the set-off for the cash flow benefits and the monies, if any, due in [exercise] of the option, and further to direct specific performance of the option agreement in accordance with such determination.
The trial court entered a final judgment for specific performance, containing the following relevant findings of fact:
1. Blackhawk Heating & Plumbing Company, Inc. properly exercised its option to purchase 217,500 shares of the common stock of the Miami National Bank on February 28,1971 and as of said date all right, title and interest in said stock was vested in Blackhawk Heating & Plumbing Company, Inc.
2. The purchase price of said stock is determined to be $2,610,611.54.
3. The cash payment due on February 28, 1971 pursuant to the Option Agreement was $104,825.95.
4. The net cash flow benefits due Black-hawk Heating & Plumbing Company, Inc. pursuant to Paragraph 6(b) of the *130 Option Agreement on February 28, 1971 were $289,004.16.
5. The Court finds that no cash payment was due in exercise of the Option Agreement.
The trial court’s order required Data Lease to specifically perform the 1970 option agreement by presenting the stock certificate representing 870,000 MNB shares along with the necessary documents to transfer 217,500 shares to Blackhawk and to request that MNB re-register the 217,-500 shares in Blackhawk’s name. In return, Blackhawk and Machata would execute a promissory note for $312,835.66 in favor of Data Lease. The final judgment for specific performance explained the effect of Data Lease’s failure to perform.
10. Should the Defendant Data Lease Financial Corporation for any reason fail to present said stock certificate, stock powers, and other appropriate transfer documents to the Miami National Bank with [sic] 15 (fifteen) days of the date of this Judgment, then this Judgment shall be deemed a cancellation of stock certificate No. 12681 and the Defendant shall be required to apply to the Miami National Bank for the reissuance of a new certificate issuing 217,500 shares of the Miami National Bank stock in the name of Blackhawk Heating & Plumbing Company, Inc. Further, by reason of this Final Judgment for Specific Performance, Blackhawk Heating & Plumbing Company, Inc. may itself apply for reis-suance of the 217,500 shares of stock as described above and shall be entitled from the date of this Judgment to all voting rights, dividends and other privileges appertaining to said 217,500 shares of the Miami National Bank stock presently registered in the name of Data Lease Financial Corporation.
On October 4, 1977, the date of entry of the final judgment, Blackhawk and Macha-ta executed and delivered the required promissory note to Data Lease. Black-hawk presented the final judgment to the MNB and requested it to issue Blackhawk a new stock certificate for 217,500 of Data Lease’s 870,000 shares. MNB refused to issue the shares. Blackhawk later discovered that pursuant to the 1973 loan and pledge agreement, MNB had honored Citibank’s request to register and issue the stock in the name of Citibank’s nominee, Johns & Co. Coincidently, the stock certificate issued to Johns & Co. bears the date October 4, 1977, and Citibank’s letter requesting this transfer bears the date October 5, 1977, the day following the issuance of the stock certificate in the name of Johns & Co. Blackhawk filed suit against Citibank, Johns & Co. and MNB in federal court alleging among other things conspiracy, tortious interference with contract and mismanagement of MNB.
In 1978, Blackhawk and Citibank executed a settlement agreement whereby Blackhawk ended its litigation against Citibank, Johns & Co. and the MNB. Black-hawk agreed to join with Citibank so each could gain the maximum recovery from the stocks held by Citibank. In 1979, Citibank sold Data Lease’s 870,000 MNB shares at a judicial sale ordered by the U.S. District Court for the Southern District of Florida and affirmed by the U.S. Court of Appeals for the Fifth Circuit. Citibank, N.A. v. Data Lease Financial Corp., 645 F.2d 333 (5th Cir.1981).
Meanwhile, the trial court denied Citibank’s motions for intervention and substitution in this case. Citibank based its motion for intervention upon the 1973 pledge agreement with Data Lease and based its motion for substitution upon the 1978 settlement agreement with Blackhawk. Notwithstanding Citibank’s interlocutory appeal, the trial court proceeded on Data Lease’s motion to conduct a final hearing on November 9, 1979. The trial court found that Blackhawk had received the benefits of the 1977 specific performance order, ordered Blackhawk to pay Data Lease $2,431,481.22, and also found that Blackhawk and Machata jointly and severally owed Data Lease $500,982.74 on their 1977 promissory note. This Court affirmed the trial court’s order denying substitution, but reversed the order denying Citibank’s *131 motion to intervene and vacated the final judgment entered during the pendency of Citibank’s interlocutory appeal. Citibank, N.A. v. Blackhawk Heating & Plumbing Co., 398 So.2d 984 (Fla. 4th DCA 1981).
On October 21,1981, the trial court made the same findings of liability as it did in the 1979 final judgment except for the sums due Data Lease, which it found amounted to $2,757,267.78 from Blackhawk and $545,-439.69 from Blackhawk and Machata with interest from October 10, 1981, at the judgment rate. The trial court expressly limited this order to adjudicate the rights of Blackhawk, Machata and Data Lease, not Citibank. The order withheld final judgment until a determination in the pending federal court action of the relative rights of Citibank and Data Lease. Blackhawk and Machata have appealed this order and Citibank has joined as a party appellant.
Blackhawk and Machata contend that the trial court erred when it required them to pay Data Lease for the 217,500 MNB shares which Data Lease failed to transfer pursuant to the 1977 final judgment which granted specific performance; that the trial court should have awarded Blackhawk damages for Data Lease’s failure to specifically perform within the terms of the option contract; and, that the trial court erred in dismissing Blackhawk’s claim against Data Lease’s President Roy W. Tai-mo based on his guarantee of Data Lease’s performance of the option agreement.
The 1977 final judgment purported to cancel Data Lease’s MNB stock certificate and give Blackhawk complete ownership of the 217,500 MNB shares, should Data Lease fail to effect a transfer of the shares. The problem with the specific performance order lies in the lack of the trial court’s jurisdiction over MNB stock certificate no. 12681, over Citibank which held a security interest in the MNB shares,[4] or over the MNB. The specific performance order only affected Data Lease, Blackhawk and Machata. Therefore, the trial court could not grant any rights to Blackhawk in the 217,500 MNB shares without the cooperation of MNB and Citibank. Instead of cooperating, Citibank immediately requested MNB to register all 870,000 of Data Lease’s MNB shares in the name of Johns & Co.
We find no support in the record for Data Lease’s argument and the trial court’s finding that Blackhawk received all it asked for under the 1977 final judgment for specific performance. An analysis of the 1979 final judgment and the 1981 order satisfies us that the trial judge erred in concluding that Blackhawk received sufficient benefits under the 1977 judgment that it should now pay for stock which it never received from Data Lease.
The trial court found that Blackhawk derived a benefit because it received injunc-tive relief. However, the trial court overlooked the fact that during the interim between this Court’s decision and the decision of the Supreme Court reinstating the injunction, Data Lease pledged the stock to Citibank, thereby effectively eliminating any benefit from the injunctive relief granted by the Supreme Court. The trial court also found that Blackhawk had the right to have the stock voted to obtain seats on the Board of Directors of Miami National Bank. This finding ignores the fact that without registration of the stock in the name of Blackhawk, no such rights existed. More importantly,' immediately following the entry of the 1977 final judgment granting specific performance, Citibank exercised its rights to have the stock registered in the name of its nominee, Johns & Co.
The trial court also concluded that because Blackhawk prevailed in the specific performance action and may have utilized that final judgment to its advantage in its litigation with Citibank that Citibank’s ultimate settlement and compromise of that litigation effectively amounted to specific performance of the stock option agree *132 ment. We find this reasoning imaginative but without substance. At the time of the settlement, Citibank’s nominee owned all 870,000 shares of the MNB stock. Black-hawk, on the other hand, had a claim for damages arising out of the transaction between Citibank and Data Lease which at best could only have resulted in money damages. We will not conjecture as to the motives for Citibank entering into the settlement agreement with Blackhawk, but we cannot construe the settlement agreement as the equivalent of specific performance of the option agreement between Data Lease and Blackhawk.
Lastly, the trial court found that because Blackhawk, in 1974, entered into an agreement with Central National Bank of Chicago whereby it assigned such rights as it might have under the option agreement as collateral for a loan, that such action constituted a benefit .under the agreement. Blackhawk could not convey any more than it had received. The transaction with Central National Bank took place more than three years before the final judgment granting specific performance, and at a time when Data Lease had already pledged all 870,000 shares of MNB stock to Citibank.
Not even the most strained reasoning can support a conclusion that the benefits found by the trial court in its 1979 final judgment and 1981 order constituted specific performance of the option agreement which provided for Blackhawk to receive 217,500 shares of the MNB stock owned by Data Lease. The agreement contemplated delivery of the stock, registration of the stock on the corporate record books of MNB and those traditional benefits which flow to a stockholder by reason of its stock ownership. We do not consider the leverage gained from the 1977 judgment, nor the settlement agreement negotiated with a third party, nor the unfulfilled right to have seats on the Board of Directors of Miami National Bank, nor the assignment of an unfulfilled option agreement sufficient to support a finding that Blackhawk had received specific performance of the stock option agreement.
Our examination of Data Lease’s continuous conduct in derogation of Blackhawk’s rights in 217,500 shares of Data Lease’s MNB shares convinces us of the inequity of Data Lease’s position that it should be paid for stock which it would not and then could not deliver. Contrary to the trial court’s finding that Data Lease did all it could do to abide by the terms of the specific performance order, the record contains no indication of the slightest effort by Data Lease to do anything to aid Blackhawk in obtaining specific performance. In effect, the trial court’s order requires Blackhawk and Machata to fully perform all their obligations under the 1977 final judgment while receiving no direct benefits, and rewards Data Lease with the purchase price after Data Lease completely failed and refused to perform. Data Lease created its own problem when it embarked upon a scheme of financing and refinancing for the purchase of the 870,000 shares of MNB stock. We view this record as clearly demonstrating that when Data Lease pledged the stock to Citibank it took the ultimate step to prevent specific performance of Black-hawk’s option to purchase MNB shares.
The trial court, by its 1979 final judgment and 1981 order, substantially modified and materially altered the terms of the option contract. It had no authority to imply specific performance or to make a new contract for the parties. In the words of our Supreme Court,
[Ojne of the most firmly established principles of the law of specific performance is that the court will not make a new or different contract for the parties, simply because the one made by them proves ineffectual; and, ordinarily, it will compel the performance of a contract only in the precise terms agreed upon by the parties themselves. [Emphasis added.]
Giehler v. Ward, 77 So.2d 452, 453 (Fla.1955).
We therefore hold that Blackhawk did not receive specific performance of the option agreement and accordingly, we reverse the final judgment in favor of Data Lease *133 Financial Corporation and against Black-hawk Heating and Plumbing Co., Inc., and Andrew Machata.
Blackhawk also contends that it should be awarded damages in lieu of specific performance. Data Lease on the other hand argues that Blackhawk made an election of remedies when it moved this Court to compel compliance with the mandate directing specific performance. It must be remembered that Blackhawk sought damages as an alternative to specific performance from the outset of this case. We do not consider Blackhawk’s continued efforts to obtain specific performance as an election of remedies. The Supreme Court held that Blackhawk was entitled to specific performance and, but for Data Lease’s pledge of the stock to Citibank and ongoing efforts to frustrate the orders of the Supreme Court and this Court, specific performance would have been an attainable result.
The trial court determined that the net cash flow benefits due Blackhawk pursuant to the option agreement amounted to $289,004.16. Data Lease had the benefit of Blackhawk’s credit and Blackhawk received no direct benefit from the option agreement. The Supreme Court noted that,
[t]his case was before the equity side of the trial court, and the gross inequity of Data Lease’s position is most apparent. It has gained financially after Blackhawk rescued it from financial disaster.
Blackhawk Heating & Plumbing Co. v. Data Lease Financial Corp., 302 So.2d at 410.
Had Data Lease performed when Black-hawk exercised its rights under the option contract, Blackhawk would have had, at a minimum, the cash flow benefits which the trial court found due in its 1977 judgment. Therefore, equity compels us to remand this case to the trial court with directions to enter judgment in favor of Blackhawk Heating and Plumbing Co., Inc., and against Data Lease Financial Corporation in the amount of $289,004.16.
Our holding that Blackhawk is entitled to money damages from Data Lease requires us to consider Blackhawk’s final point concerning Roy W. Talmo’s liability based upon his personal guarantee of Data Lease’s performance under the option agreement. Count IV of Blackhawk’s second amended complaint alleged that Tai-mo remained personally liable to Black-hawk for damages resulting from Data Lease’s breach of the option agreement. We have examined the second amended complaint and Talmo’s guarantee of Data Lease’s performance and hold that the trial court erred in dismissing Blackhawk’s claim against Taimo.
Lastly, we need not determine Citibank’s rights in this litigation since Citibank and Blackhawk have resolved those questions by their settlement agreement.
Accordingly, we reverse the order of the trial court in favor of Data Lease and remand this case with directions to enter judgment in favor of Blackhawk and against Data Lease in the amount of $289,-004.16. We also remand for the purpose of entering a cost judgment against Data Lease for all taxable costs, including special master fees, accrued during the course of this litigation and for the trial court to determine Roy W. Talmo’s liability under his guarantee of Data Lease’s performance of the option agreement.
REVERSED and REMANDED with instructions.
ANSTEAD, C.J., and WALDEN, J., concur.

. Blackhawk Heating & Plumbing Co. v. Data Lease Financial Corp., 287 So.2d 118 (Fla. 4th DCA 1973); Blackhawk Heating & Plumbing Co. v. Data Lease Financial Corp., 302 So.2d 404 (Fla.1974); Data Lease Financial Corp. v. Blackhawk Heating & Plumbing Co., 325 So.2d 475 (Fla. 4th DCA 1975); Blackhawk Heating & Plumbing Co. v. Data Lease Financial Corp., 328 So.2d 825 (Fla.1975); Blackhawk Heating & Plumbing Co. v. Data Lease Financial Corp., 352 So.2d 182 (Fla. 4th DCA 1977); Blackhawk Heating & Plumbing Co. v. Data Lease Financial Corp., 354 So.2d 1000 (Fla. 4th DCA 1977); Blackhawk Heating & Plumbing Co. v. Data Lease Financial Corp., 355 So.2d 533 (Fla. 4th DCA 1978); Blackhawk Heating & Plumbing Co. v. Data Lease Financial Corp., 358 So.2d 1204 (Fla. 4th DCA 1978), cert. denied, 364 So.2d 881 (Fla.1978); Blackhawk Heating & Plumbing Co. v. Data Lease Financial Corp., 370 So.2d 94 (Fla. 4th DCA 1979); Data Lease Financial Corp. v. Blackhawk Heating & Plumbing Co., 384 So.2d 211 (Fla. 4th DCA 1980); Citibank, N.A. v. Blackhawk Heating & Plumbing Co., 398 So.2d 984 (Fla. 4th DCA 1981).

. Citibank, N.A. v. Data Lease Financial Corp., 645 F.2d 333 (5th Cir.1981), and other unreported decisions.

. Citibank, N.A., formerly known as First National City Bank, is a national banking association located in New York, New York.

. Citibank was not a party when the trial court entered its judgment granting specific perform-anee.