SAWAYA, J.
The first appearance of the underlying paternity action in this court two years ago resulted in an opinion that specified five errors regarding the computation of child support that required correction on remand. Russell v. McQueen, 62 So.3d 683, 683 (Fla. 6th DCA 2011) (Russell I). Of those errors, the following two are pertinent to our review in this current appeal: twice charging the father, Harold Russell (Father), for the child’s unreimbursed medical expenses; and failing to properly calculate Father’s income for 2006 and 2007. Id. Despite this court’s opinion explaining these errors, confusion crept into the remand proceedings, resulting in further error that is manifest in the order we now review.[1] So we must readdress those two errors. Father claims that a third error discussed in Russell /, the failure to credit Father with the cost of the child’s medical insurance, was not properly corrected on remand. But that error, as we shall see, only has tangential significance *1086 to Father’s actual contention that the trial court erred by failing to credit him for the cost of his medical insurance. We also see a fourth issue has emerged that was not evident when Russell I was decided: whether the trial court erred in failing to reconsider the attorney’s fees award to the mother, Holly McQueen (Mother), that was based on prior erroneous calculations of Father’s income. These matters will be discussed seriatim.
Father contends that the error of charging him twice for the child’s unreim-bursed medical expenses was not corrected on remand. As a prelude to our discussion of that error, we note the statutory requirements that “[e]ach order for [child] support shall contain a provision for health insurance for the minor child” and “[t]he court shall apportion the cost of health insurance, and any noncovered medical ... expenses of the child, to both parties by adding the cost to the basic [child support] obligation ....” § 61.13(1)(b), Fla. Stat. (2010). An option is therefore available that allows the trial court to simply add this medical expense to the child support obligation or order the obligation to be paid separately on a percentage basis. § 61.30(8), Fla. Stat. (2010). Eschewing the percentage basis approach (or so it appeared), the trial court imposed a flat-rate obligation of $230 per month on Father to cover the unreimbursed medical expenses and factored that amount in Father’s total child support obligation. Having done that, the trial court then ordered Father to pay a percentage of the unreim-bursed medical expenses in addition to the flat rate. Russell I held that this double charge was improper and ordered that the error be corrected on remand. Unfortunately, this same error was made again by the trial court, and now we must, for the second time, order that it be corrected. We parenthetically note that Mother concedes the error in her brief.
Father next contends that his income for 2006 and 2007 was not properly calculated on remand. But the error, as we see it, primarily involves the trial court going beyond the dictates of our mandate on remand by delving into matters previously reviewed and affirmed by this court in Russell I. The mistake revealed in Russell I consisted of failing to use Father’s 2006 income tax return to calculate his support obligation for that year and attributing his wife’s income ($89,915) to him in calculating his income for 2007. The record establishes that on remand the trial court did use Father’s 2006 tax return to calculate his support obligation for that year, and although Father claims further error in that calculation, we do not see any mistake. We do, however, see that the trial court’s reconsideration of Father’s 2007 income went beyond the deletion of his wife’s income and traveled the entire route of completely recalculating Father’s income for 2007 by crediting Father with business losses previously considered and rejected by the trial court in the original proceedings. Because we examined the calculation of Father’s 2007 income and affirmed that calculation (except for the improper inclusion of his wife’s income) in the first appeal, the correction on remand only required the simple mathematical task of subtracting her income from Father’s income for 2007.
As we begin discussion of the issue regarding the trial court’s failure to consider the cost of Father’s medical insurance in calculating his income, we acknowledge, in fairness to the trial court, that Russell I spoke in terms of failing “to include the cost to Father of the health insurance that covered his child in calculating child support.” 62 So.3d at 683 (emphasis added). Therefore, Russell I *1087 and the mandate that emanated from that appeal did not require inclusion of Father’s health insurance in the calculation. We believe that failure constitutes an error in need of correction based on notions of fairness and the statutory provisions that require the trial court “to determine net income based upon section 61.30, Florida Statutes, by determining ‘gross income’ as defined in subsection (2)(a) 1-14 and then subtracting from this figure ‘allowable deductions’ as defined in subsection (3)(a)-(g).” Pedroza v. Pedroza, 779 So.2d 616, 618-19 (Fla. 5th DCA 2001) (footnote omitted).[2] In calculating gross income, “[a]l-lowable deductions shall include ... [h]ealth insurance payments ....” § 61.30(3)(e), Fla. Stat. (2010). The record shows that Father testified at the initial hearing, and on remand, regarding the amount he paid for his health insurance and yet, despite his repeated requests that this cost be included in the calculation, it was not deducted from his gross income. Father notes the inherent unfairness in denying him that deduction while allowing Mother to deduct the cost of her medical insurance from her gross income. On remand, the trial court should allow the deduction to Father, just as it was allowed to Mother. See Magann v. Magann, 848 So.2d 496, 498 (Fla. 2d DCA 2003) (“[I]n calculating the child support, the trial court erred by failing to take into consideration the $125.04 per month the former husband paid for his own health insurance.” (citation omitted)).
We are left with the alleged error regarding attorney’s fees. This discussion will require some procedural history. When the trial court rendered the original final judgment, it reserved the issue of Mother’s request for attorney’s fees for a hearing at a later time. That time came on February 19, 2010, while the Russell I appeal was pending in this court. Over a year after the hearing on that date, the trial court rendered its order granting Mother’s motion for fees, concluding that Father has the ability to satisfy Mother’s need for fees based on his computed annual income of approximately $152,000 and her income of $46,000. Coincidentally, on the same day this court rendered its decision in Russell I (June 3, 2011), Father filed a motion for rehearing, contending that the amount of his annual income was an issue in the Russell I appeal. Three days later, after this court held that the trial court’s calculation of Father’s ineome erroneously included Father’s wife’s salary of $89,915, Father filed a motion to stay the fee order, noting the reversal by this court of the erroneous calculation of Father’s income. Shortly thereafter, the mandate issued from this court and the trial court scheduled a hearing for the purpose of recalculating child support in accordance with the mandate and to rehear “the issue of attorney fees since the parties’ income, especially the father’s income is at issue which affects this Court’s past appeal ruling on attorney’s fees.” In the order rendered after that hearing, however, the trial court decided that this court’s decision in Russell I precluded it from doing so, stating that “the issue of past attorney fees was not addressed in the appellate [realm]. The Case was reversed and remanded ‘for consideration and recalculation of child support.’ ”
*1088 This procedural course, with its unique bumps and round-about turns, provides the basis for further discussion of this issue. The readily apparent fact is that this court did not address the issue of fees because that issue was not raised in the Russell I appeal. Equally important, the trial court did not derive its authority to review the award of attorney’s fees from this court’s mandate in Russell I, but rather from its prior order granting rehearing as to the issue of attorney’s fees. After this court’s opinion made clear that the trial court’s erroneous calculations more than doubled Father’s income, the trial court should have reconsidered whether, in light of the corrected amount, there is still a significant disparity in the parties’ incomes such that Father should be required to pay Mother’s attorney’s fees. See Tilchin v. Tilchin, 65 So.Sd 1207 (Fla. 2d DCA 2011) (reversing and remanding order on attorney’s fees when final judgment of dissolution was previously reversed, as “the actions taken by the trial court on remand from our previous opinion could impact the figures used to calculate the parties’ respective needs or abilities to pay”); Austin v. Austin, 12 So.3d 314, 318 (Fla. 2d DCA 2009) (requiring trial court on remand to reconsider the issue of attorney’s fees based on the appellate court’s reversal of the equitable distribution scheme); Doyle v. Doyle, 789 So.2d 499, 503 (Fla. 5th DCA 2001) (same). Therefore, the trial court erred in declining to reconsider the award of attorney’s fees based on Father’s corrected income.
Father requests that we instruct the trial court that compliance with this court’s mandate is required. The principle has been firmly established in the law since early times that when an appellate court issues its mandate, the trial court is obligated to comply without deviation. See Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Fin. Corp., 328 So.2d 825 (Fla.1975); O.P. Corp. v. Vill. of N. Palm Beach, 302 So.2d 130 (Fla.1974); Cone v. Cone, 68 So.2d 886 (Fla.1953); Baskin v. Klemm, 118 Fla. 657, 160 So. 509 (1935); State ex rel. Dowling Co. v. Parks, 99 Fla. 1264, 128 So. 837 (1930); Curry v. State, 16 So.3d 933 (Fla. 3d DCA 2009); Robinson v. Weiland, 988 So.2d 1110 (Fla. 5th DCA 2008); Formor v. State, 923 So.2d 563 (Fla. 5th DCA 2006); Mendelson v. Mendelson, 341 So.2d 811 (Fla. 2d DCA 1977); City of Miami Beach v. Arthree, Inc., 300 So.2d 65 (Fla. 3d DCA 1973).[3] We do not attribute to the trial court any conscious effort to deviate, but charge the errors that were made to the confusion (noted several times in Father’s brief) that cast a pall over the remand proceedings. We trust that with this new opinion, the pall has been lifted so that the next remand will proceed without any further confusion.
We reverse the order under review and remand this case for further proceedings consistent with this opinion.
REVERSED; and REMANDED for further proceedings.
ORFINGER, C.J. and GRIFFIN, J„ concur.

. The order rendered after the remand proceeding is entitled "Order on Motion for Rehearing on Child Support and Attorney Fees” and is dated October 27, 2011. The paternity action only involved one child.

. See also Hindle v. Fuith, 33 So.3d 782, 786 (Fla. 5th DCA 2010) ("In making an award of child support, the trial court is required to determine the net income of each parent pursuant to section 61.30, and to include findings in the final judgment. See Deoca v. Deoca, 837 So.2d 1137, 1138 (Fla. 5th DCA 2003); see also § 61.30(2) (includable income), (3) (allowable deductions), (4)-(6) (determination of net income), Fla. Stat. (2008).”); Deoca, 837 So.2d at 1138 (quoting Pedroza).

. Of course deviation is permitted if authorization is first obtained from the appellate court that issued the mandate. Blackhawk, 328 So.2d at 827 ("A trial court is without authority to alter or evade the mandate of an appellate court absent permission to do so.” (citation omitted)). Here, no permission was obtained from this court to deviate from the terms of the mandate and the opinion in Russell I.