189 So.2d 176 (1966)
Gay POLING, Incompetent, Appellant,
v.
CITY BANK & TRUST COMPANY OF ST. PETERSBURG, and Charles R. Holley, Appellees.
Gay POLING, Incompetent, Appellant,
v.
Charles R. HOLLEY and Allyn D. Kendis, Appellees.
Gay POLING, Incompetent, Petitioner,
v.
Charles R. HOLLEY and Allyn D. Kendis, Respondents.
Nos. 5929, 6405, 6409.
District Court of Appeal of Florida. Second District.
July 20, 1966.
*179 Fowler, White, Gillen, Humkey & Trenam, Tampa, and Edward M. Walsh, St. Petersburg, for appellant.
Holley & Osborne, St. Petersburg, for appellees.
PIERCE, Judge.
Case No. 5929 is the second appeal in this same case, both involving the alleged excessiveness of fees allowed by the County Judge of Pinellas County (Judge Richard A. Miller) in an incompetency proceeding therein pending. Case Nos. 6405 and 6409 involve additional aspects of review in the instant appeal.
Upon a petition alleging physical incapacity, Gay Poling was on April 23, 1959 adjudged incompetent by the County Judge of Pinellas County and on the same date City Bank & Trust Company of St. Petersburg was appointed guardian of the property of said incompetent and Charles R. Holley began acting as attorney for the guardian bank. At that time Poling was 57 years of age and a resident of St. Petersburg, Florida. In 1956 he had been seriously injured in the course of his employment in the City of Cleveland, Ohio, where he then lived, as a result of which injuries he became a paraplegic and thereafter moved to St. Petersburg with his wife. At the time of his adjudication, Poling's estate consisted of assets of approximately $4,800.00, plus a note and mortgage upon which was due a balance of approximately $11,206.00 drawing interest at the rate of 6% per annum, payments upon which were being collected by a Cleveland bank, which was also collecting for Poling $105.70 per month pension money from the Public Employees Fund in Ohio. There had also been previously established in behalf of Poling a liquidated claim of $3,703.00 by the Industrial Commission and Workmen's Compensation Bureau of Ohio, representing unpaid temporary disability and medical payments accruing from the 1956 accident. At the time of his incompetency adjudication, Poling also had an unliquidated claim under the Ohio Compensation Laws for further benefits arising out of the aforesaid accident. In January, 1960, Mr. Holley, acting for the guardian bank, filed claim with the Compensation Bureau in Ohio seeking to perfect the unliquidated claim for further accident benefits.
On July 22, 1960, the County Judge entered order restoring Gay Poling to legal competency and ordered the guardian bank to "within a reasonable time make full settlement with the said Gay Poling, file its final accounting with this Court and petition for its discharge." However, notwithstanding said order of July 22, 1960, the incompetency proceeding was permitted to drag on for three more years, from July 22, 1960, to July 9, 1963, when the bank filed its petition for approval of its "final accounting" and for allowance of fees for the bank as guardian, and attorney Holley filed petition for attorney's fee as the bank's attorney. On July 26, 1963, after hearing, the County Judge entered order allowing fees to the bank of $4,500.00 for acting as guardian and the total sum of $11,800.00 to attorney Holley for acting as attorney for the guardian bank.[1]
Gay Poling (who then was sui juris but whose "incompetency proceeding" was still pending in the Pinellas Court) took an appeal to this Court from the order of *180 July 26, 1963, allowing fees as aforesaid, contending the same were excessive. On August 19, 1964, this Court, speaking through Judge Andrews, reversed the County Judge's order, holding that the guardian bank and its attorney Holley were entitled to reasonable fees for services rendered only up to the date that the ward, Gay Poling, was declared competent on July 22, 1960, "and for other services necessary to close out the guardianship." See Poling v. City Bank & Trust Company of St. Petersburg, and Holley, 167 So.2d 52.
The case thereupon went back to the County Judge and in due course, on November 24, 1964, further hearing was had before said County Judge in the light of this Court's reversal. At the November, 1964 hearing only trust officer McPheeters of the guardian bank, and attorney Holley, testified. The County Judge thereafter, on November 30, 1964, entered new order awarding attorney Holley a total sum of $7,500 (of which $1,000 had already been paid by agreement) as his fees for representing the guardian, and awarding the guardian bank the sum of $4,000 for acting as guardian. From that order of November 30, 1964, Gay Poling, through his individually retained attorneys, has appealed to this Court and the cause is therefore here upon the merits of the second fee-awarding order aforesaid.
Before taking up the merits of the present main appeal, we will dispose of the two ancillary proceedings for review filed here in the same case. The County Judge, in the probate proceeding below, on April 26, 1965, while the instant appeal was pending in this Court, entered order reciting that Holley and his Cleveland, Ohio, associate counsel, Allyn B. Kendis, had filed suit in the Pinellas County Circuit Court on the law side seeking judgment against Gay Poling for attorney fees for legal services before the Workmen's Compensation Bureau of the Ohio Industrial Commission, that the aggregate amounts ultimately ordered to be paid to the bank and its attorneys for their services could "very well be as much as or more than the assets presently held by the Guardian," and that it was proper for the County Judge to put a hold order on the entire assets then remaining in the guardian's possession to insure payment of any judgment in favor of Holley and associate. The order then decreed that "an attorneys' charging lien exists on all of (Poling's) assets now held" by the guardian bank in favor of attorneys Holley and Kendis, "which lien is prior in dignity to all other claims against said funds other than the compensation of the guardian and Court costs and other proper expenses of the guardian," said lien to "continue until final determination" in the County Judge's Court and also the Circuit Court of the amounts due said attorneys for their professional services in connection with the Ohio Industrial Commission proceeding "and the payment of any judgment or order."
On June 23, 1965, Gay Poling, by his present counsel, filed his notice of interlocutory appeal (Case No. 6405) from said order of April 26, 1965, and on June 24, 1965, filed also in this Court petition for writ of certiorari (Case No. 6409) to review the same order. Uncertainty as to the proper remedy to review the said County Judge's order was the reason for filing both appellate proceedings.
We hold that certiorari is the proper proceeding for review and that the writ is available under the factual situation presented. As to the merits of the April 26, 1965 order, we hold that the County Judge below was wholly without jurisdiction to enter the same. In re: Baxter's Estate, Fla. 1956, 91 So.2d 316; In re: Warner's Estate, 1948, 160 Fla. 460, 35 So.2d 296; In re Guardianship of White, Fla.App. 1962, 140 So.2d 311. It was in effect an injunctive order and a decree impressing a lien upon cash assets, both of which are the exclusive functions of a Chancery Court. The interlocutory appeal should therefore be dismissed and the writ of certiorari issued, with directions to the *181 County Judge to quash his said order of April 26, 1965.
This brings us to the main appeal involving the propriety of the second order allowing fees entered on November 30, 1964. As hereinbefore observed, this Court had previously reversed a prior order of the County Judge which awarded fees to the bank of $4,500 for its services as guardian over the period of fifty-one months from April, 1959 to July, 1963 and to Mr. Holley in the amount of $11,800 for acting as attorney for the guardian over the same period of time. The reversal was grounded upon the proposition that neither the guardian nor its attorney were entitled to fees out of the estate assets except for the period of legal incompetency of Poling, which was from April 23, 1959 to July 22, 1960, or a period of fifteen months. The reversal opinion directed the County Judge "to enter an order allowing reasonable fees for services rendered up to the date the ward was declared competent (July 22, 1960), and for such other services reasonably necessary to close out said guardianship." Upon the going down of the mandate following the reversal, the County Judge held hearing on November 24, 1964, and on November 30, 1964, entered order awarding the guardian bank the sum of $4,000 as guardian's fees and $7,500 as attorney's fees to Mr. Holley. We hold that both latter fees were excessive and that, in the light of the record and of the entire history of the case in the lower Court and in this Court, this Court in the proper exercise of its appellate jurisdiction should enter a new order here fixing such fees.
Only two witnesses appeared and testified before the County Judge on November 24, 1964, Mr. McPheeters who was trust officer of the guardian bank, and Mr. Holley, the attorney. Mr. McPheeters testified in a dual capacity, first as to work done by the bank in its capacity as guardian, and secondly as an expert witness on the value of such services and what a reasonable fee therefor should be. Mr. Holley testified to the work he had done as attorney for the guardian but had no opinion as to the amount of fee to be awarded. The issue before the County Judge at the November, 1964 hearing was identical with the issue at the July, 1963 hearings, namely, the fixing of reasonable fees to be awarded to the guardian bank and the attorney for the bank for their respective services in connection with the estate. The only difference is that at the July, 1963 hearings, the fees were contemplated to be awarded for services over the entire fifty-one months ending July 26, 1963, while the November, 1964 hearing was for the re-fixing of fees for only the fifteen months period ending July 22, 1960.
At the November, 1964 hearing Mr. McPheeters blandly testified that 80% of the bank's work in connection with the estate was performed during the fifteen months period prior to restoration. If this be true, only 20% of the entire work was done during the last three years, from July, 1960, to July, 1963. This does not comport with reason, nor is it borne out by the record. During the first fifteen months the record indicated that 67 checks were drawn on the guardianship account, while during the last three years 333 checks were drawn. Deposits were comparable. During the first fifteen months one annual accounting was filed by the bank, while during the last three years three annual accounting were so filed. Neither Mr. McPheeters nor any other bank official had to attend Court at any time during the fifteen months interval prior to restoration. Thereafter he did attend Court twice, both times in connection with the bank's application for fees. There was no real estate of Poling that had to be managed or handled. There was no business or business interests of Poling that had to be carried on or looked after. There were no dependents of Poling who had to be taken care of.
Mr. McPheeters read from a previously prepared memorandum a list of some 11 *182 items which he claimed bolstered the bank's claim to fees, but practically all of them were either matters that the attorney for the estate more directly handled or were matters beyond the scope of the bank's appointed duty. Thus, he cited (1) the sale of Poling's car to a bank official, (2) the payment of Poling's monthly union assessments, (3) the relinquishment of his dower interest in a parcel of his wife's Ohio property, (4) being made nominal defendant in his wife's divorce suit, (5) restoration of Poling's competency, and (6) the proceedings before the Ohio Industrial Commission for extended benefits. All of these matters, however, were matters of paper work, largely if not entirely, handled by the attorney. Other items cited were (7), (8), (9) and (11), which will be hereinafter discussed separately. Item (10) referred to arranging with the Cleveland bank to transmit mortgage payments to the guardian bank as they were made in Cleveland.
Mr. McPheeters laid great stress (items (7), (8), (9) and (11)) upon the time, trouble and vexations encountered by him and the bank in trying to take care of Poling's personal needs, wants, comforts, conveniences, driftings from one place to another, etc. Payment of bills to doctors, nurses, hospitals, and for necessary transportation, and seeing to it that such bills were reasonable, were certainly within the legitimate scope of the guardian bank's duties, but beyond that there is grave question. We gather from a minute examination of the record that these repeatedly unpleasant and unwholesome contracts with Poling weighed very heavily with the bank in its request for fees. But the bank was not guardian of the person of Poling. The bank was only guardian of the property of Poling. And there is a vast difference under the Florida statute. As a matter of fact, it is quite doubtful whether a bank or trust company could act or be appointed as guardian of the person of one under disability. Express provision is made for a national bank or trust company to "act as guardian of the property of any incompetent" (Sec. 744.27(3), but no provision is made by Statute for such appointment as guardian of the person. And guardianship matters are governed and controlled exclusively by Statute in Florida. Hughes v. Bunker, Fla. 1955, 76 So.2d 474.
Sections 744.48, 744.49 and 744.51, Florida Statutes, F.S.A., point up very succinctly the line of demarcation between the duties and powers of a guardian of the person, and the duties of a guardian of the property. These Sections are as follows:
"744.48 Duties of Guardian of the Person.
It is the duty of the guardian of the person to take care of the person of the ward (and) to treat him humanely * * *."
"744.49 Powers of Guardian of the Person.
The guardian of a person shall be entitled to the custody of the ward. Such guardian shall not have power to bind the ward or his property or to represent him in any legal proceedings pertaining to his property."

"744.51 Duties of Guardian of the Property.
It is the duty of the guardian of the property of the ward to protect and preserve it, to invest it prudently, to apply it as provided in § 744.64, to account for it faithfully, to perform all other duties required of him by law, and at the termination of the guardianship, to deliver the assets of the ward to the person or persons lawfully entitled thereto." (Emphasis supplied).
F.S. Section 744.64, F.S.A. does provide that the guardian of the property, upon authorization of the County Judge, may apply the ward's income to his care, support, education, and maintenance, but such Section must read in pari materia with F.S. Section 744.50, F.S.A. which provides that the guardian of the property, by order of the County Judge, shall make such payments *183 for the support, care, maintenance and education of the ward to the guardian of the person of the ward in such amounts and at such intervals as the County Judge may direct; thus drawing a clear line of demarcation between the two.
On the subject of fees to be allowed a guardian of the property of an incompetent for his services as such, F.S. Section 745.32, F.S.A. provides as follows:
"745.32 Expenses and compensation.
A guardian of the property of a ward shall be allowed all necessary expenses and attorney's fees paid in the care, management and settlement of the ward's property. A guardian shall be allowed such compensation as the county judge may deem just and reasonable for his services, including services rendered in the sale of real or personal property, the conduct of litigation on behalf of or against the ward or his property, the carrying on of the ward's business pursuant to orders of the court and for any other services which may be found by the county judge to have been proper and necessary."
We deem further references to the record, including the evidence before the County Judge, on the question of reasonable compensation to the guardian bank, to be unnecessary and superfluous. The subject matter of the amount of fees to be allowed for services pertaining to the estate of an incompetent touches always a very sensitive area, and this case is no exception. Suffice to say that a careful reading and consideration of the record before us leads us to the conclusion that a fee of $1,500 for the services of the bank would be reasonable for acting as guardian in this proceeding from April 23, 1959 to July 22, 1960 and "for such other services reasonably necessary to close out said guardianship." This would be equivalent to an allowance of $100 per month for each of the fifteen months of Poling's incompetency.
This leaves for consideration the matter of the fee to be allowed Mr. Holley for his services as attorney for the guardian bank. As hereinbefore stated, Mr. Holley, after the former reversal, was his only witness at the November, 1964, hearing on the resumed question of fees. And, unlike Mr. McPheeters, Holley did not undertake the role of "expert witness" as to the reasonable amount of his own fees; he merely reiterated briefly his former testimony as to his services as attorney for the guardian in connection with the Workmen's Compensation proceedings in Ohio.
Mr. Holley had formerly been allowed a fee of $11,800 based upon the entire fifty-one months he had presumably served the guardian bank, but that fee was automatically set aside when this Court reversed and held that fees could only be allowed for the fifteen months of incompetency. Upon re-submission of the issue to the County Judge he was allowed $7,500 for the shortened period. The sum of $1,000 had already been paid Mr. Holley by agreement and the order directed the payment to him of an additional $6,500. We are convinced from the record this sum is still excessive and that a fee, in addition to the $1,000 already paid, of $2,500 would be reasonable for his services as attorney for the bank.[2]
It would serve no useful purpose to further elaborate upon the showing of the record or the views and conclusions we derive from it. Suffice to say that judicial restraint alone impels us to withhold further comment thereon.
One or two other matters that have accumulated in the appellate file in this *184 matter need to be disposed of. On July 26, 1965, appellee Holley filed motion here to dismiss this appeal as to appellant's Points III and IV set forth and argued in appellant's brief. Point III contended that the County Judge failed to give full faith and credit to the official proceedings in Ohio, as required by the federal Constitution.[3] Point IV raised the same objection but grounded the same upon the rules of comity as applied in Florida. Mr. Holley attached to his motion of July 26, 1965 a copy of an order entered by the Ohio Industrial Commission on June 3, 1965, which purported to vacate that Commission's order of July 15, 1963[3] "for the reason that jurisdiction in the matter of fees in this claim has been taken by Pinellas County Court, State of Florida." It is contended that said Points III and IV had thus become moot because of the aforesaid order of June 3, 1965. Inasmuch as it has been made to appear to this Court that neither appellant Gay Poling, who has been sui juris since July 22, 1960, nor his counsel, were given any notice of the supposed action of the Ohio Industrial Commission of June 3, 1965, and therefore had no opportunity to be heard, the motion to dismiss must be denied. To rule otherwise would be tantamount to holding that ex parte administrative action in another State, without even the rudimentary observance of due process, could direct and control the processes of the appellate Courts of Florida. Parenthetically, however, we have attached no importance to said Points III and IV in considering the merits of this appeal.
On April 28, 1965, appellee Holley filed another motion for allowance of fees to him "for defending this appeal," citing F.A.R. 3.16(e), 31 F.S.A. as authorization therefor.[4] But said Rule 3.16(e) mandatorily requires such motion for attorney's fee to be "filed with the clerk of the appellate court at or before the time of filing the party's first brief," and the motion was filed here on a date subsequent to the filing of appellee Holley's first brief. See Ames v. Ames, Fla.App. 1963, 153 So.2d 737, where a motion under analogous circumstances was denied. Moreover, such motions are discretionary, and in view of our disposition of the main appeal, the motion should be denied upon its merits.
On June 13, 1966, Mr. Holley filed suggestion in this Court that Gay Poling had died on May 2, 1966, and thereupon moved for an order requiring the personal representative of Poling's estate to "become a party" to these proceedings. We are of the opinion that such substitution of parties may be dispensed with in view of F.A.R. 3.11, subd. e(5), which reads as follows:
"Rule 3.11. Parties
* * * * * *
e. Death of Parties and Substitution.
* * * * * *
(5) Revivor Unnecessary. If any party to the appeal shall die after the cause is completely ready for decision, but before decision rendered, a survivor of the suit against the deceased party shall not be necessary."
Final oral arguments on the merits of this appeal were held on March 11, 1966, and the cause was "completely ready for decision" at the time the suggestion and *185 motion for substitution of parties was filed. In such situation, under the quoted rule, a substitution is unnecessary, and the motion should be denied.
In accordance with all the foregoing, the interlocutory appeal filed in this Court on June 23, 1965, Case No. 6405, is dismissed; the petition for writ of certiorari filed herein on June 24, 1965, Case No. 6409, is granted and the County Judge's order entered below on April 26, 1965, is quashed; the motion of appellee Holley on July 26, 1965 to dismiss the main appeal as to Points III and IV of appellant is denied; the motion filed by Mr. Holley on April 28, 1965 for attorney's fees for services in this Court is denied; and the motion filed herein on June 13, 1966 for substitution of the personal representative in the place and stead of Gay Poling, now deceased, is denied.
Upon the merits of the main appeal from the County Judge's order of November 30, 1964, allowing fees to the guardian bank and its attorney, we have hereinbefore indicated we would dispose of same by entering a new order here fixing such fees ourselves and directing payment thereof. Such action by the Court at the appellate level has ample precedent under Florida law. F.S. Section 59.34, F.S.A. has been a part of the statute law of Florida since 1832 when it was passed as the 5th Sec. of the Act of Feb. 10th, 1832[5] (Thomp.Dig. 449) and reads as follows:
"It shall be the duty of the court on an appeal or writ of error to examine the record, to reverse or affirm the judgment, sentence or decree of the court below, or to give such judgment, sentence or decree as the court below should have given, or as it may appear according to law." (Emphasis supplied).
And said quoted Statute, particularly the italicized portion thereof, has been utilized by the appellate Courts of this State from 1852, in Southern Life Insurance and Trust Company v. Cole, 4 Fla. 359, text 364, to 1966 in Muskin v. Muskin, Fla.App., 184 So.2d 923. In the Southern Life Insurance case, after quoting the above Statute, the Court said:
"It is very clear that the power to give the decree which the Court below ought to have pronounced, could never be exercised if this court did not possess the right to look into the whole case as it is presented in the record, and to consider it as the court below should have considered it."
In the Muskin case the 3rd District Court held that an award of $5,000 as attorney's fees pendente lite for the wife's attorney by the Court below was excessive and reduced the amount accordingly to the sum of $1,500. In between Southern Life Insurance and Muskin the Statute was extensively recognized and in several cases utilized. For cases where the authority conveyed by the statute was recognized, but not utilized, see: Daubmyre v. Hunter, 1932, 106 Fla. 858, 144 So. 408, text 410; Sullivan v. Chase Federal Savings and Loan Association, Fla.App. 1961, 132 So.2d 341, text 343; Cason v. Baskin, 1947, 159 Fla. 31, 30 So.2d 635, text 640; Braddock v. Seaboard Air Line Railroad Company, Fla. 1955, 80 So.2d 662.
For cases where the statutory authority was actually utilized, see: In re Petition of Vermeulen, Fla.App. 1960, 122 So.2d 318, text 322; Bridier v. Burns, 1942, 150 Fla. 238, 7 So.2d 142, text 143; Schnabel v. Betts, 1887, 23 Fla. 178, 1 So. 692, text 693; Wright v. Board of Public Instruction, Fla. 1957, 100 So.2d 403, text 406.
Having satisfied ourselves of our authority in the premises, and feeling that the instant case is appropriate, we have concluded *186 to exercise the prerogative confided to us by the Statute, and to enter that order or decree which the County Judge below should have entered. Accordingly it is
ADJUDGED AND ORDERED that the City Bank & Trust Company of St. Petersburg be and it is hereby awarded and allowed the sum of Fifteen Hundred ($1,500.00) Dollars for its services as guardian of the property of Gay Poling, incompetent, up to July 22, 1960, the date said Gay Poling was declared competent, and for such other services reasonably necessary to close out said guardianship.
It is further ADJUDGED AND ORDERED that payment of the sum of One Thousand ($1,000.00) Dollars to Charles R. Holley as previous part payment of attorney's fees for representing said guardian, is hereby ratified and approved; and the additional sum of Twenty-Five Hundred ($2,500.00) Dollars is hereby allowed as additional compensation to said Charles R. Holley (and his associate counsel), as and for legal services as counsel for said guardian bank in said incompetency proceeding, up to July 22, 1960, the date said Gay Poling was declared competent.
It is further ADJUDGED AND ORDERED, and the Court so finds, that the aforesaid fees herein allowed constitute fair and reasonable compensation for the respective services indicated.
It is further ADJUDGED AND ORDERED that the previous order entered by the County Judge of Pinellas County, Florida, in this proceeding, dated November 30, 1964, be and the same is hereby set aside, vacated and held for naught.
It is further ADJUDGED AND ORDERED that a copy of this opinion and order, duly certified by the Clerk of this Court, shall, together with the mandate of this Court in accordance herewith, be transmitted to and filed in the County Judge's Court for Pinellas County, Florida, and when so filed and recorded this Order shall thereupon become the order of said County Judge's Court with the same force and effect as if that Court had rendered same; and the City Bank & Trust Company of St. Petersburg shall thereupon forthwith pay to itself and the said Charles R. Holley out of the assets of said estate the respective sums of money hereinbefore allowed, and shall thereupon take such steps immediately as may be necessary and effectual to completely close out said guardianship estate.
Order appealed from vacated and set aside, and new order entered by this court.
SHANNON, Acting C.J., and LILES, J., concur.
NOTES
[1] Said sum of $11,800.00 was broken down as follows: $1,000 for the usual services incident to the incompetency proceedings, "and the divorce of the incompetent and other unusual services" exclusive of the Workmen's Compensation proceedings in Ohio, and $10,800 "for the unusual and extraordinary services performed by him with reference to the Workmen's Compensation proceedings" which included his Ohio associate counsel.
[2] It is our understanding that in the common law action instituted in the Pinellas Circuit Court subsequent to the County Judge's order of November 30, 1964 re-fixing fees herein (see supra, p. 4, et seq.), Mr. Holley and his associate Ohio counsel recovered judgment against Poling for $4,500 for legal services in connection with the Ohio Workmen's Compensation proceedings, presumably for the period of time after July 22, 1960.
[3] The Ohio Industrial Commission had already, on July 15, 1963, awarded an attorney's fee of $1,000 to Mr. Holley and his co-counsel for legal services rendered in the Ohio proceedings.
[4] 3.16 Taxation of Costs
* * * * *
"e. Attorney's Fees. Where attorney's fees are allowable by law for services in the appellate court the request therefor shall be presented by motion filed with the clerk of the appellate court at or before the time of filing the party's first brief, and shall be disposed of at the time the case is disposed of on the merits, unless otherwise ordered by the Court. The motion for attorneys' fees shall not be incorporated in the briefs or other bound papers but shall be filed on a separate paper."
[5] A reminder of the antiquated origin of present Sec. 59.34 is joltingly brought home by the fact that on the same page (345) of McClellan's Digest of the laws of Florida 1822-1881, where the precurser of Sec. 59.34 is contained, there appears a statutory appropriation: "For all stationery and candles necessary for the use of the Supreme Court." (Emphasis supplied).