659 So.2d 1294 (1995)
In re the GUARDIANSHIP OF Jennifer Ann NEHER.
Sharon Lynn NEHER, Appellant/Cross-Appellee,
v.
Jennifer Ann NEHER, APpellee/Cross-Appellant.
No. 94-01707.
District Court of Appeal of Florida, Second District.
September 1, 1995.
Richard A. Kupfer of Richard A. Kupfer, P.A., West Palm Beach, and Charles P. Erickson of Paulich, O'Hara & Slack, P.A., Naples, for appellant/cross-appellee.
*1295 Cathy S. Reiman and William J. Hazzard of Cummings & Lockwood, Naples, for appellee/cross-appellant.
SCHOONOVER, Acting Chief Judge.
The appellant, Sharon Lynn Neher, challenges several orders entered in a guardianship proceeding involving her daughter, Jennifer Ann Neher. The successor guardian for Jennifer Neher, Margaret Losleen, has filed a cross-appeal contending that the trial court erred when it did not order Sharon Neher to reimburse the guardianship for certain unapproved payments that were made. We find that the trial court erred in finding that Sharon Neher was in indirect criminal contempt of court and by not awarding her any fees for her services as Jennifer Neher's guardian, but affirm the trial court in all other respects.
Jennifer Neher, the natural daughter of Sharon Lynn Neher, and the adopted daughter of Dr. John Neher, was born in 1970 with a birth defect. Shortly thereafter she developed staphylococcal meningitis and encephalitis which was evidently not properly treated. In addition to several conditions which developed in the early weeks of her life, she later contracted osteomyelitis which resulted in her having thirty-nine operations. After Dr. Neher, a medical doctor, reviewed his daughter's medical records, conducted independent research, and consulted with other doctors, a medical malpractice action was filed on Jennifer Neher's behalf. All parties have agreed that without Dr. Neher's expertise and efforts a malpractice action would not have been filed, nor any settlement received. In March of 1989, Jennifer Neher was found to be incompetent and Dr. and Mrs. Neher were appointed co-guardians. In 1991, shortly before the malpractice action was settled for $2.85 million, Dr. Neher resigned as one of Jennifer Neher's guardians.
Jennifer Neher resided with her parents after the malpractice action was settled. However, in January of 1993 she moved out of the family home because the relationship began to deteriorate. During 1993, Jennifer employed an attorney to have her capacity restored or, in the alternative, to have her mother removed as guardian and the parties began to litigate.
Throughout this period, an "Interim Plenary Guardian" was appointed. Although Sharon Neher was not removed as guardian at that time, a restraining order prohibiting her from having any contact with her daughter was entered, and she subsequently agreed to resign as guardian after the court made a decision concerning Jennifer's incompetency.
Shortly before trial, Sharon Neher filed an amended inventory which contained a claim for reimbursement of her expenses, Dr. Neher's expenses incurred on behalf of the ward after the guardianship was created, attorney's fees, litigation expenses, and guardian fees for her and Dr. Neher. The other parties sought reimbursement of their attorneys' fees from the guardianship estate.
At trial, Jennifer Neher changed her position concerning the guardianship of her person and property and agreed to the appointment of a guardian of her property and to a limited guardianship in relation to her person. The rest of the issues mentioned above were tried.
At the conclusion of the proceedings, the trial court entered several orders which are pertinent to this appeal. First, the court restored certain rights to Jennifer Neher and delegated certain other rights to the new guardian which the court also appointed at the conclusion of the proceedings.
Next, the court entered a judgment finding that Sharon Neher was in indirect criminal contempt of court for not following an order concerning an accounting and for contacting the ward with a written communication in violation of the restraining order that had been entered.
Next, the trial court denied Dr. and Mrs. Neher's request for reimbursement of their *1296 out of pocket expenses made on behalf of their daughter and refused to award either of them any compensation for services rendered to the guardianship. The trial court also refused a request that certain sums paid out of the estate be repaid because they were unauthorized and inappropriate payments.
Last, the trial court substantially reduced the amount Sharon Neher had requested for attorney's fees and costs. This timely appeal followed.
We find, as mentioned above, that the trial court erred in holding Sharon Neher in indirect criminal contempt and by refusing to award her any fees for services rendered to the guardianship, but affirm, without discussion, all other points raised by the parties.
Jennifer Neher filed a motion seeking to have her mother held in contempt of court pursuant to Florida Rule of Civil Procedure 1.380. The motion alleged that Sharon Neher was in direct contempt of court because she violated a restraining order and failed to comply with another court order by not timely filing a proper accounting and by terminating a deposition she was ordered to attend. The motion requested the court to find the guardian in direct contempt of the two orders, to require her to pay attorney's fees and costs from personal funds, and to discharge her as guardian pursuant to section 744.474, Florida Statutes (1993).
The trial judge found Sharon Neher had committed indirect criminal contempt for failing to follow the two orders mentioned above, sentenced her to serve ten days in the county jail, and placed her on probation. The court ordered that: "The conditions of probation are that the 10 day jail sentence is suspended pending the service of 30 hours of community service as directed by the Collier County Probation office."
In order to affirm the trial court in connection with the contempt order, we would have to find that the court properly held that Sharon Neher committed civil contempt by violating rule 1.380 as alleged in the ward's motion, or that the trial court on its own motion properly found that she had committed indirect criminal contempt pursuant to rule 3.840.
To the extent the court's ruling was based upon the ward's motion, the ruling was in error. The motion was filed pursuant to rule 1.380. Although this rule permits a finding of contempt, it deals with discovery violations. The only allegation in the motion covered by this rule deals with Sharon Neher's terminating a deposition. The court, however, did not find her in contempt for this act, but instead, for two acts not dealing with discovery. Furthermore, even if the court had held Sharon Neher in contempt for terminating the deposition, we would reverse in this case. We have held the objective of this rule is not punitive but is aimed at obtaining compliance with discovery rules. Allstate Ins. Co. v. Biddy, 392 So.2d 938 (Fla. 2d DCA 1980), rev. denied, 399 So.2d 1140 (Fla. 1981). The court could have achieved this objective by granting some or all of the relief requested in Jennifer Neher's motion without sentencing Sharon Neher to serve time in jail and not providing her a way in which to purge her contempt.
To the extent that it can be argued that the holding is proper because the court did not hold Sharon Neher in civil contempt pursuant to Jennifer Neher's motion and rule 1.380, but instead held her in indirect criminal contempt on its own motion, the court erred because the procedural safeguards of Florida Rule of Criminal Procedure 3.840, which allows the court to find someone in contempt of court upon its own motion, were not followed. The court did not issue an order to show cause, ask for an answer, or allow Sharon Neher the opportunity to present evidence of mitigating circumstances. Fla.R.Crim.P. 3.840(a), (b) and (g). We, accordingly, reverse the judgment of contempt.
The trial court also erred by not awarding any guardianship fees to Sharon Neher who claimed that she spent more than 2000 hours performing services for the ward. Even the attorney for the interim plenary *1297 guardian agreed that some fees were due. Section 744.108(2), Florida Statutes (1993), sets forth the criteria to be considered in establishing guardian's fees. After considering this statute and the evidence presented to the court, we must conclude that Sharon Neher established a right to receive some fee and that the trial court erred by not awarding her a fee for at least some of the services she provided to her ward.
In considering Sharon Neher's request for fees, the court found that some services were performed before the guardianship was established, some of the times for certain services were inflated, and many time entries were not credible. The court also found that some of the fees claimed were for services performed after the proceedings became adversary and that much of what Sharon Neher did for her ward was merely doing what a mother should do for her daughter and, therefore, not compensable. The court did not, however, find that each and every item that the guardian sought compensation for was covered by one of these findings.
This court has held that a daughter is not entitled to compensation as a guardian of the person of her mother for doing what a daughter does. In re Read v. Kenefick, 555 So.2d 869 (Fla. 2d DCA 1989). There is also no reason that a mother should be entitled to compensation for doing what a mother does. In this case, however, not all of Sharon Neher's actions were actions that are normally done by a mother, and she should have received compensation for those services that were not. The trial court correctly awarded the guardian some attorney's fees for services rendered to the guardian. This ruling constitutes a holding that Sharon Neher performed some compensable services for the guardianship. Sharon Neher established a guardianship for her daughter, filed annual accountings, performed other services that were beyond the duties of a mother, and successfully thwarted an attempt to terminate the guardianship. Therefore, she should be compensated for some services.
We, accordingly, reverse and remand for reconsideration of the guardianship fee issue. Upon remand, the court may of course, as it did during these proceedings, adjust the fee for improper, inflated, and noncredible requests for compensation, but must award a reasonable fee for the services properly performed. The court may allow additional evidence if it determines it necessary to do so.
Reversed and remanded with instructions.
PATTERSON and BLUE, JJ., concur.