868 So.2d 687 (2004)
In re GUARDIANSHIP OF Sara H. SAPP.
Lee O'Hare and Lynn Atherton, Appellants,
v.
Lalai Hamric, Appellee.
Nos. 2D02-4010, 2D03-1404.
District Court of Appeal of Florida, Second District.
April 2, 2004.
*688 Cathy S. Reiman of Roetzel & Andress, Naples, for Appellants.
Melville G. Brinson, III, of Smoot Adams Edwards Doragh & Brinson, P.A., Fort Myers, for Appellee.
WALLACE, Judge.
In these consolidated appeals, Lee O'Hare and Lynn Atherton challenge an order awarding compensation to their sister, Lalai Hamric, the guardian of the person of their mother, Sara H. Sapp (the Ward), and an order awarding attorney's fees and costs to Hamric's attorney, Melville G. Brinson, III. Because we conclude that the award of attorney's fees and costs to Brinson was barred by the express terms of the parties' settlement agreement, we reverse the order authorizing the *689 payment of attorney's fees and costs from the Ward's estate to Brinson. We also reverse the order awarding compensation to Hamric and remand for further proceedings because Hamric's records were insufficient to support the award and because the order in part impermissibly compensated Hamric for services outside the scope of her duties as guardian of the person of the Ward.

Facts and Procedural History
These proceedings began in November 2001 with the filing by O'Hare and Atherton of petitions to determine incapacity and for the appointment of a plenary guardian of the person and property of the Ward. At the time of the filing of the petitions, the Ward was eighty-five years of age. She resided at Health Park Care Center in Fort Myers, Florida. The Ward was widowed and had four children: Lee O'Hare of Fairbanks, Alaska; Lynn Atherton of Tierra Verde, Florida; James M. Sapp of Fort Myers, Florida; and Lalai Hamric, who also resided in Fort Myers. O'Hare and Atherton requested the appointment of a professional guardian, Harold A. Foy.
Hamric filed a response to the petition admitting that the Ward was totally incapacitated. Hamric also contended in her response that she should be appointed as guardian of the Ward. In support of her position, Hamric noted that she was already handling the medical needs and financial affairs of the Ward pursuant to a durable power of attorney executed by the Ward in 1996. In addition, Hamric pointed out that she was also acting as the trustee of the Ward's existing trust and the trust established by the Ward's deceased husband, James A. Sapp. Hamric alleged that the Ward's only assets not held in trust were the contents of her condominium and her clothing. James M. Sapp also filed a response to O'Hare and Atherton's petition, admitting that the Ward was totally incapacitated and requesting the appointment of Hamric as guardian.
The parties engaged in extensive discovery proceedings. The matter was ultimately tried before a general master. On January 10, 2002, the second day of trial, the parties reached a settlement agreement that was dictated into the record of the proceedings. The parties' settlement agreement provided, in pertinent part, as follows:
(1) With certain provisions not relevant here, Hamric would be appointed as guardian of the person of the Ward.
(2) Northern Trust Bank or another mutually acceptable corporate or professional guardian would be appointed as guardian of the property of the Ward.
(3) The guardian of the property would send copies of the annual accountings and periodic investment account statements to each of the Ward's four children.
(4) Hamric would continue to serve as trustee of both the Ward's trust and the James A. Sapp Trust, but she would enter into a custodial agreement with the guardian of the property whereby it would manage all of the Ward's assets and pay her bills.
(5) The Ward's trust would pay the sum of $25,000 to O'Hare and Atherton and $25,000 to Hamric toward their attorney's fees and costs incurred for the litigation. Any additional fees and costs for the litigation would be the responsibility of the party who incurred them.
(6) The parties and the guardian of the property would execute releases necessary to effect "a complete global settlement." *690 On February 6, 2002, the circuit court entered an order approving the settlement agreement.
With some modifications, the performance of the settlement agreement was ultimately completed. Hamric was appointed and qualified as guardian of the person of the Ward. Northern Trust Bank declined to serve as guardian of the property, and the parties agreed instead to the appointment of Harold A. Foy, who had originally been proposed for the position by O'Hare and Atherton. Northern Trust Bank did agree to serve as custodian of the Ward's assets pursuant to a contract with Hamric, who continued to serve as trustee of the Ward's trust. The final arrangements provided for the Bank to transfer money to Foy on a monthly basis upon court approval and on instructions from Hamric so that he could pay the Ward's expenses.
The Ward died on November 23, 2003, during the pendency of these appeals.

CASE NO. 2D02-4010

The Award of Fees and Costs to Brinson
The settlement agreement that the parties reached on January 10, 2002, as announced to the general master by attorney Brinson, provided, in pertinent part, as follows:
The Petitioners['] [O'Hare and Atherton's] fees and costs will be paid by the trust for this litigation up to $25,000, beyond that that's their responsibility. They agree the trust may pay Mrs. Hamric's fees and costs up to $25,000, beyond that it's her responsibility. The trust will pay the examining committee fees and Mr. Lakeman's fees. [Lakeman was the court-appointed attorney for the Ward.]
And I think also we agreed that the litigants plus the guardian will execute a wide variety of mutual releases so that this is a complete global settlement. I think what we are planning is that we would get a custodial agreement with the bank, which of course Ms. Reiman [counsel for O'Hare and Atherton] would review, and once we get everyone's approval on it, present that to you with a comprehensive order approving all this and whatnot and making the appointments.
Pursuant to the court-approved settlement agreement, Brinson was paid the sum of $25,000 from the Ward's funds toward Hamric's fees and costs for the litigation.
For a variety of reasons not pertinent to our decision, the implementation of the settlement reached on January 10, 2002, proved to be more difficult and time consuming than the parties had anticipated. On June 6, 2002, Brinson filed a petition that acknowledged receipt of $25,000 in attorney's fees and costs and requested an award of an additional $13,320.50 attorney's fees and $459.56 costs for the period from January 11, 2002, through May 24, 2002. In his petition, Brinson alleged that he had rendered the services and incurred expenses on behalf of Hamric in her capacity as guardian of the person of the Ward.
At a hearing on Brinson's petition, counsel for O'Hare and Atherton objected to an award of the fees and costs requested on the ground that the settlement agreement barred an additional award because "the fees that are being sought at this particular time are fees to consummate the settlement agreement and come within exactly what it was that we settled for." Brinson responded: "Our position and contention is that the settlement agreement provision for fees provided for fees for handling the litigation through settlement and that subsequent to the settlement began the process of handling the guardianship and putting everything that we had agreed to in *691 place, and that it's not covered." Brinson also argued that he was entitled to the requested fees and costs because his services were rendered on behalf of Hamric in her capacity as guardian of the person of the Ward and were beneficial to the Ward.
The circuit court entered an order that awarded Brinson all of the fees and costs he requested. On appeal, O'Hare and Atherton present three arguments. Because we agree that the settlement agreement barred the award of additional fees and costs to Brinson, we need not address O'Hare and Atherton's two other arguments.

The Standard of Review
Settlement agreements are governed by contract law. Robbie v. City of Miami, 469 So.2d 1384, 1385 (Fla.1985); Schlosser v. Perez, 832 So.2d 179, 182 (Fla. 2d DCA 2002). Therefore, we apply a de novo standard of review. See Vollmer v. Key Fin. Corp., 810 So.2d 966, 968 (Fla. 2d DCA 2002); Kaplan v. Bayer, 782 So.2d 417, 419 (Fla. 2d DCA 2001). "It is wellsettled that when entitlement to attorney's fees is based on the interpretation of contractual provisions as a pure matter of law, an appellate court will undertake a de novo review to determine the appropriate construction of the contract." Stevens v. Zakrzewski, 826 So.2d 520, 521 (Fla. 4th DCA 2002) (citing Gibbs Constr. Co. v. S.L. Page Corp., 755 So.2d 787, 790 (Fla. 2d DCA 2000)).

Analysis
An attorney who has rendered services to the ward or to the guardian on the ward's behalf is entitled to a reasonable fee for services rendered and reimbursement on behalf of the ward. § 744.108(1), Fla. Stat. (2002); Cilley v. First Nat'l Bank of Mount Dora, 396 So.2d 808, 809 (Fla. 5th DCA 1981). In this case, however, the parties agreed to limit the attorney's fees and costs payable from the assets of the Ward "for this litigation" to the sum of $25,000 per side (the limiting agreement). Counsel were not precluded from charging more than $25,000, but any fees and costs exceeding that amount were to be payable by the party who incurred the fees, not from the Ward's funds.
Brinson argued that the limiting agreement applied only to fees and costs incurred through January 10, 2002the date the settlement agreement was reached. According to Hamric and Brinson, the limiting agreement did not apply to fees and costs incurred subsequent to January 10, 2002, for services to perform and conclude the settlement agreement. This controversy requires us to interpret the meaning of the phrase "for this litigation" as used in the parties' settlement agreement.
A contract is ordinarily to be construed as a matter of law by giving effect to the intent of the parties as expressed by the terms of the agreement. Berry v. Berry, 550 So.2d 1125, 1126 (Fla. 3d DCA 1989). Words and phrases should be given their natural meaning or a meaning most commonly understood in relation to the subject matter and circumstances. Ennis v. Warm Mineral Springs, Inc., 203 So.2d 514, 518 (Fla. 2d DCA 1967).
To "litigate" is "to make the subject of a lawsuit: contest in law: prosecute or defend by pleadings, evidence, and debate in a court." "Litigation," naturally, is "the act or process of litigating." Webster's Third New International Dictionary of the English Language Unabridged 1322 (Merriam-Webster, Inc.1986). When the participants in any litigated matter reach a settlement, there are invariably matters to be done in order to perform the settlement agreement and conclude the litigation. In a simple case, the items necessary to conclude the settlement may be limited to the *692 delivery of funds, the exchange of releases, and the preparation and filing of a stipulation for dismissal. In a complicated matter, the legal work necessary to implement and complete a settlement may be extensive. Nevertheless, regardless of the complexity of the case, the legal work necessary to conclude a litigated matter is an integral part of the litigation process. Indeed, careful preparation of the appropriate documents is critical to concluding the litigation and ensuring a durable settlement in accordance with the intent of the parties. See generally Michael A. Kamen, Settlement, in Florida Civil Practice Before Trial § 4.22 (Fla. Bar CLE 6th ed.2000); Michael G. Tanner, Releases Make Sure They Bring Finality, 72 Fla. B.J. 51 (Dec.1998). For this reason, we conclude that the parties intended in their settlement agreement to apply the limiting agreement not only to fees and costs incurred in the active contest of the matter, but also to fees and costs incurred in the performance and completion of the settlement agreement. Two additional reasons support our conclusion.
First, in the recitation by the attorneys of the settlement agreement into the record, the statement of the limiting agreement was immediately followed by a discussion that contemplated the preparation of "a wide variety of mutual releases" for a "complete global settlement," "a custodial agreement with the bank," and "a comprehensive order approving all this." Thus the extensive nature of the legal work to be performed to conclude the litigation was apparent to all. Nevertheless, neither attorney suggested that the limiting agreement did not apply to the legal work which remained to be done to conclude the matter. If the parties had intended that the limiting agreement did not apply to this additional work, one would expect that such an exception to the limiting agreement would have been expressly stated. The omission to note such an exception strongly suggests that none was intended. In addition, the limiting agreement was not linked to services rendered and costs incurred through the date of the announcement of the settlement.
Second, O'Hare and Atherton agreed to the appointment of Hamric as guardian of the person of the Ward and dropped various claims against her as part of the agreed exchange for the limiting agreement. The limitation on fees and costs was mutual. The settlement agreement contemplated that both sides would be treated equally with regard to the payment of fees and costs, and any further depletion of the Ward's funds for fees and costs related to the litigation would end. Although counsel for O'Hare and Atherton also performed legal services in connection with the implementation of the settlement agreement, their attorney has not petitioned for additional fees and costs. Thus the circuit court's order for the payment of additional fees and costs to Brinson treats the parties unequally and deprives O'Hare and Atherton of part of the benefit of their bargain.
Hamric advances two additional arguments in support of the award of fees and costs to Brinson. First, she contends that the award was proper because it compensated Brinson for services rendered and expenses incurred on behalf of Hamric in her capacity as guardian of the person of the Ward. Nevertheless, a review of Brinson's detailed time records discloses that all of the services rendered and costs incurred related not to Hamric's duties as guardian of the person of the Ward but, rather, to the assets and property of the Ward. The attorney for a guardian is not entitled to compensation for services rendered outside the scope of the guardian's authority to act for the ward. See In re Guardianship of Jansen, 405 So.2d 1074, *693 1077 (Fla. 2d DCA 1981); Morgan v. Guardianship of Turgeon, 755 So.2d 161, 162 (Fla. 4th DCA 2000); Panno v. Perry (In re Guardianship of Schoyahn), 637 So.2d 81, 82 (Fla. 4th DCA 1994).
Hamric also argues that Brinson was entitled to compensation without regard to the scope of Hamric's authority as guardian because his services were of benefit to the Ward, citing Metzger v. First National Bank of Clearwater, 585 So.2d 372, 373 (Fla. 2d DCA 1991). This argument misses the mark. Although Brinson's services may have been beneficial to the Ward, the limiting agreement precluded an award of fees and costs to Brinson from the Ward's funds in excess of $25,000 for services and expenses related to the litigation. The fees and costs for which Brinson sought additional compensation were performed and incurred in connection with the litigation. Therefore, pursuant to the limiting agreement, they were not compensable from the Ward's funds.

CASE NO. 2D03-1404

The Award of Fees and Costs to Hamric
Pursuant to the parties' settlement agreement, Hamric was appointed guardian of the person of her mother. In October 2002, Hamric filed a petition for fees and costs for the period from February 26, 2002, through September 28, 2002. In her petition, Hamric requested $2818.75 in fees (51.25 hours at $55 per hour) and $428.15 reimbursement for mileage expense (1173 miles at $.365 per mile). O'Hare and Atherton objected to Hamric's petition on three grounds: (1) Hamric had agreed not to charge for her services as guardian of the person; (2) the records of the services for which Hamric claimed compensation were inadequate; and (3) because Hamric was the daughter of the Ward, she was not entitled to compensation as guardian of the person of the Ward "for merely doing what any daughter does." After a hearing, the circuit court entered an order awarding Hamric all of the fees she requested in the amount of $2818.75 and substantially all of the mileage expense in the amount of $413.55.

The Standard of Review
The amount of guardian's fees to be awarded as compensation for services rendered is in the discretion of the trial court, and its determination will not be disturbed unless there is a lack of competent, substantial evidence to support the award. Gamse v. Touby, 382 So.2d 115, 116 (Fla. 3d DCA 1980). Nevertheless, in guardianship cases, as in other cases, discretionary acts are subject to the test of reasonableness, i.e., they must be supported by logic and justification for the result and founded on substantial, competent evidence. Valentini v. State (In re Guardianship of Sitter), 779 So.2d 346, 348 (Fla. 2d DCA 2000).

The Applicable Law
A guardian is entitled to a reasonable fee for services rendered. § 744.108(1); Lucom v. Atl. Nat'l Bank of W. Palm Beach. 97 So.2d 478, 481 (Fla. 1957); Schacter v. Guardianship of Schacter, 756 So.2d 1075, 1076 (Fla. 4th DCA 2000); Ash v. Coconut Grove Bank, 448 So.2d 605, 607-08 (Fla. 3d DCA 1984). The criteria to be considered by the court in determining an award of fees to a guardian are set forth in section 744.108(2). Pursuant to section 744.108(5), a petition for guardian's fees and expenses "must be accompanied by an itemized description of the services performed for the fees and expenses sought to be recovered." The requirement of section 744.108(5) is mandatory. An order for guardian's fees based upon a petition that fails to include an itemized description of the services for *694 which compensation is requested will be reversed. See Anderson v. Sun Trust Bank/North, 679 So.2d 307, 308-09 (Fla. 5th DCA 1996).
A guardian is not entitled to compensation for services rendered outside the scope of his or her appointment. In re Guardianship of Jansen, 405 So.2d at 1077; Poling v. City Bank & Trust Co. of St. Petersburg, 189 So.2d 176, 182-83 (Fla. 2d DCA 1966). This principle has been applied in cases involving guardians who have been in a close familial relationship with the Ward. Under such circumstances, the guardian of the person is not entitled to compensation for merely doing what any family member would do for their relative under the circumstances. Read v. Kenefick (In re Guardianship of Read), 555 So.2d 869, 870-71 (Fla. 2d DCA 1989). Nevertheless, a guardian in a close familial relationship with the ward is entitled to be compensated for reasonable and necessary services within the scope of his or her duties as guardian. Neher v. Neher (In re Guardianship of Neher), 659 So.2d 1294, 1297 (Fla. 2d DCA 1995); Read, 555 So.2d at 870-71; Osterman v. Copeland (In re Guardianship of Osterman), 515 So.2d 1066, 1067 (Fla. 4th DCA 1987).

Analysis
The first objection raised by O'Hare and Atherton to Hamric's fee petition was that she had agreed not to seek fees if appointed. In support of their objection, O'Hare and Atherton relied on statements made by Hamric in response to their petition seeking the appointment of a professional guardian for their mother:
PETITIONER [Hamric] is well able to perform the services of Guardian for the proposed Ward, Sara H. Sapp, she has been performing all such functions already in her dual capacity of Trustee and Attorney in Fact. It would constitute an undue expense chargeable to the few remaining assets of Sara H. Sapp to retain a professional guardian, further, Sara H. Sapp would be subject to undue stress were she to be placed in the care of a complete stranger taking the place of her daughter who has been providing abundant and appropriate care for her for the past several years.
(Emphasis supplied.) O'Hare and Atherton assert that they relied on this representation in entering into the settlement agreement that provided for the appointment of Hamric as guardian of the person of their mother. In addition, O'Hare and Atherton observe that persons appointed to serve as guardian for a family member "rarely" seek compensation for their services.
An arrangement for a guardian to serve without compensation is inconsistent with our guardianship law. See § 744.108(1); Lucom, 97 So.2d at 481; Schacter, 756 So.2d at 1076; Ash, 448 So.2d at 607-08. Therefore, such an arrangement would require a specific agreement by the guardian not to charge for services in order to be enforceable. We interpret the statement relied upon by O'Hare and Atherton as an argument made by Hamric in support of her appointment as guardian and not as a promise or representation that she would not seek compensation for her services if appointed. The parties' settlement agreement provided for the appointment of Hamric as guardian of the person of the Ward but did not include a promise by Hamric to serve without compensation. The parties made express provisions in the settlement agreement for limits on fees for the attorneys. If the parties intended that Hamric was to serve as guardian without compensation, one would expect that they would have included such a term in what they characterized as "a global settlement agreement." The omission of a reference *695 to any limits on compensation for Hamric in the settlement agreement persuades us that Hamric did not agree to serve without compensation.
We do agree with O'Hare and Atherton's second argument that Hamric's records were insufficient to support her fee petition. Hamric's records were nothing more than mileage logs doubling as time records and containing uninformative entries such as "nursing home," "Health Park," and "mother." Such cryptic entries were completely inadequate to satisfy the requirement of section 744.108(5) that the guardian's petition for fees and expenses "must be accompanied by an itemized description of the services performed for the fees and expenses sought to be recovered." In response, Hamric does not dispute the inadequacy of her time records. She argues instead that her testimony at the contested hearing provided the necessary supplemental information detailing her services that cured any deficiency in her petition.
We conclude that the insufficiency of Hamric's petition for fees and expenses could not be cured by supplemental information presented at a hearing. Section 744.108(5) provides that the guardian's petition for fees and expenses must be accompanied by an itemized description of the services performed for the fees and expenses sought to be recovered. This requirement is mandatory. The production of the requisite information at a hearing is not an acceptable substitute for the inclusion in the fee petition of the itemized description of the services performed as required by the statute. See Anderson, 679 So.2d at 308-09.[1]
The strict enforcement of the mandate of section 744.108(5) will promote the efficient and inexpensive administration of guardianship estates. The inclusion of an itemized description of the services performed for the fees and expenses requested in guardianships will, in most instances, enable both the court and interested parties to determine without a hearing the compensability of the services performed and the reasonableness of the fees and costs requested. A contrary rule would encourage the filing of incomplete petitions and require the court and interested parties to schedule hearings that might otherwise be avoided in order to obtain the necessary information. This would result in the inefficient use of scarce judicial resources and increased expense to everyone concerned, including the estates of the wards.
Because Hamric's petition failed to comply with section 744.108(5), the trial court's order awarding her guardian's fees and costs must be reversed. On remand, if Hamric applies again for fees, she must provide adequate documentation with her petition.
Because Hamric may reapply for fees and costs on remand, we address O'Hare and Atherton's third argument that the circuit court's order improperly compensated Hamric "for merely doing what any daughter does" and for services outside the scope of her duties as guardian of the person. The mileage logs attached to Hamric's fee petition reflect that from March 2002 through September 2002, Hamric visited the Ward at the nursing home seven or eight times per month. At the hearing on the fee petition, Hamric *696 testified that she did the Ward's laundry, spoke with the Ward's nurses, sat with the Ward, and attended quarterly care plan meetings. The circuit court ruled that Hamric was entitled to compensation for all of the time and expenses she had claimed with the minor exception of certain mileage expenses. The circuit court also ruled that Hamric, who had no training or experience as a professional guardian, would be compensated for her services at the rate of $55 per hour, the prevailing hourly rate for professional guardians in Lee County, Florida.[2]
The leading case in Florida on the recovery of fees by a guardian who is in a close familial relationship with the ward is Read v. Kenefick (In re Guardianship of Read), 555 So.2d 869 (Fla. 2d DCA 1989). In the Read case, one of two co-guardians of the person and property of the ward challenged an order awarding guardian's fees and costs to the other co-guardian. The hearing in the trial court was unreported, and the appellant failed to furnish a stipulated statement of facts as a substitute for a transcript. In its discussion of the appellant's challenge to the fee award to the co-guardian, this court said:
Mr. Read [the appellant] contends that the time records indicated that Mrs. Kenefick [the appellee] requested compensation for time spent performing duties which one would normally undertake as a daughter. He argues that a guardian who is in a close familial relationship with the ward may not recover compensation for all time spent with a ward under the guise that it was necessary in connection with her duties as guardian. We agree that a daughter is not entitled to compensation as guardian of the person of her mother for merely doing what any daughter does and that a guardian should not be paid for services outside the scope of his duties as a guardian. In this case, however, Mrs. Kenefick not only presented time records to the court but also testified concerning the necessity and scope of the services she performed on behalf of her mother. Based upon the records and testimony, the court found that the services were reasonable and necessary and that the hourly rate requested for these services was reasonable.
Id. at 870-71 (citations omitted). This court found the trial court's award of guardian's fees to the daughter of the ward to be "not erroneous on its face." Id. at 871. Because the correctness of the trial court's ruling depended not only on the daughter's records but also upon the evidence presented at the hearing for which no transcript or acceptable substitute was available, this court affirmed the trial court's award of fees and costs to the daughter.
The Read case was followed by Neher v. Neher (In re Guardianship of Neher), 659 So.2d 1294 (Fla. 2d DCA 1995). The Neher *697 case involved a mother who had been appointed as guardian for her daughter. The trial court refused to award the mother any compensation for her services as guardian. Finding that the mother performed some compensable services for the guardianship, this court said:
Sharon Neher [the mother] established a guardianship for her daughter, filed annual accountings, performed other services that were beyond the duties of a mother, and successfully thwarted an attempt to terminate the guardianship. Therefore, she should be compensated for some services.
Id. at 1297. This court reversed the trial court's order and remanded for reconsideration of the guardianship fee issue. On remand, the circuit court was directed to "award a reasonable fee for the services properly performed." Id.
Certain general principles may be derived from the Read and Neher cases. A guardian who is in a close familial relationship with the ward is entitled to compensation for the type of services performed on behalf of the ward for which a non-family member guardian would be entitled to compensation. However, a guardian who is in a close familial relationship with the ward is not entitled to be compensated for the performance of normal family duties on behalf of the ward merely because of his or her status as guardian.
In order to properly consider O'Hare and Atherton's argument, we must first survey the duties of a guardian of the person. The powers and duties of a guardian of the person include the exercise of the rights of the ward that have been delegated to the guardian. § 744.361(1). Depending upon the extent of the ward's incapacity, those rights may include:
(1) At least in some instances, to apply for government benefits, section 744.3215(3)(c);
(2) To determine the ward's residence, section 744.3215(3)(e);
(3) To consent to medical and mental health treatment on behalf of the ward, section 744.3215(3)(f); and
(4) To make decisions about the ward's social environment or other social aspects of his or her life, section 744.3215(3)(g).
Pursuant to sections 744.362(1) and 744.363 and Florida Probate Rule 5.690(1), the guardian of the person must file with the court an initial guardianship report consisting of an initial guardianship plan within sixty days after the issuance of letters of guardianship. The guardian of the person is also responsible for filing with the court an annual guardianship report consisting of an annual guardianship plan. §§ 744.367(1), 744.3675; Fla. P.R. 5.695(a)(1). See generally Robert P. Scheb, Guardian of the Person: Duties, Responsibilities, and Liabilities, in Florida Guardianship Practice §§ 14.1.31 (Fla. Bar CLE 4th ed.2002). The duties of a guardian of the person generally concern the assessment of the ward's health and functioning, the development of a plan to promote the ward's care and well-being, and the implementation of the plan by appropriate measures in the best interests of the ward.[3]
If the ward does not reside with the guardian, the guardian of the person must *698 visit the ward periodically. In many guardianship cases, as in this case, the ward resides in a care facility rather than in a private residence. The guardian must consult with the ward's doctors, nurses, and the staff of the facility where the ward resides as may be appropriate. The guardian must also participate in care planning conferences for the ward and review pertinent records concerning the ward to ensure that the care plan is properly implemented.
Hamric's fee petition sought compensation for an average of seven or eight visits per month to the Ward. O'Hare and Atherton's challenge to the circuit court's order requires a determination of the number of visits to the Ward per month that were properly compensable as part of Hamric's duties as guardian of the person and how many were noncompensable because they were part of "merely doing what any daughter does."
The circuit court's order compensated Hamric for all of her visits to the Ward. Unfortunately, Hamric's failure to include an itemized description of the services for which she sought compensation in her fee petition gave the circuit court little or no information concerning the extent to which her services may have been properly compensable. Nevertheless, we conclude that the circuit court's order necessarily included compensation to Hamric for services outside the scope of her duties as guardian. We do not believe a professional guardian would need to visit a ward in a care facility seven or eight times per month in order to discharge his or her duties in the absence of a health emergency involving the ward or other special circumstances.[4] On remand, the circuit court should establish the number of visits and other services that would reasonably be performed by a professional or other nonfamily member guardian in order to discharge a guardian's duties to the Ward. To the extent that Hamric actually performed and properly documented such services, the circuit court should compensate her for those services at an appropriate rate of compensation. Hamric should not be awarded compensation for services that would not generally be undertaken by a professional or other nonfamily member guardian, i.e., "for merely doing what any daughter does." Read, 555 So.2d at 870; see also Neher, 659 So.2d at 1297. In addition, the circuit court should not compensate Hamric for doing the Ward's laundry. The performance of laundry services and similar tasks is outside the scope of Hamric's duties as guardian of the person.
Finally, we agree with O'Hare and Atherton that the circuit court erred in compensating Hamric for a three-hour meeting held on April 9, 2002, at Northern Trust Bank concerning the settlement of the litigation between the parties. This service was outside the scope of Hamric's duties as guardian of the person and was not properly compensable. See Poling, 189 So.2d at 181-83.

Conclusion
In case number 2D02-4010, we hold that attorney Brinson was not entitled to an award of additional attorney's fees and costs. The circuit court's order awarding such additional fees and costs to him is reversed. In case number 2D03-1404, we hold that the circuit court erred in awarding guardian's fees and costs to Hamric based on a petition that did not comply with section 744.108(5) and in compensating Hamric for services outside the scope of her duties as guardian. The order awarding guardian's fees and costs to Hamric is reversed, and the case is remanded *699 to the circuit court for further proceedings.
Reversed and remanded for further proceedings consistent with this opinion.
NORTHCUTT and KELLY, JJ., concur.
NOTES
[1] We do not suggest that a party seeking fees and costs from a guardianship estate may not explain the petition and provide additional information at a hearing concerning the services and costs for which compensation is requested. On the contrary, such evidence will frequently be both necessary and appropriate. However, the presentation of such explanatory evidence at a hearing does not satisfy the mandate of section 744.108(5).
[2] O'Hare and Atherton suggest, not unreasonably, that if Hamric is to be compensated at all, her compensation should have been set at a rate less than the rate for professional guardians. A professional guardian should be able to perform the duties of a guardian more efficiently than a family member. See generally Alison Barnes, The Virtues of Corporate and Professional Guardians, 31 Stetson L.Rev. 941, 954-58 (2002) (comparing the advantages and disadvantages of family guardians and professional guardians). The increased efficiency of a professional guardian should ordinarily command a higher rate of compensation than a guardian with little or no training or experience. Nevertheless, O'Hare and Atherton did not offer any evidence in the circuit court concerning what hourly rate for Hamric's services would have been reasonable under the circumstances. Thus their assertion that the rate of compensation was excessive does not demonstrate reversible error.
[3] The National Guardianship Association (NGA) has developed a set of standards of practice for guardians. These standards address in detail both the duties and the initial and ongoing responsibilities of a guardian of the person. National Guardianship Association, Standards of Practice 6-8 (NGA Standard 12Duties of the Guardian of the Person; NGA Standard 13Guardian of the Person: Initial and Ongoing Responsibilities) (2003), available at http://www.guardianship.org/pdf/sofp.pdf.
[4] NGA Standard 13 requires that "[t]he guardian shall visit the ward monthly."